CASE 33.—ACTION BY A. J. ADDINGTON AGAINST C. T. WARDEN FOR TRESPASS TO LAND.—Jan. 15.

# Warden v. Addington

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1. Appeal and Error—Decisions Reviewable—Title to Real Property—Amount in Controversy.—The Court of Appeals has jurisdiction of an appeal, where the title to land is involved, irrespective of the amount in controversy.

2. Boundaries—Estoppel.—To constitute a statement by a landowner that he would set back his boundary fence to the line recited by his deed and exclude a strip in dispute an estoppel in favor of a purchaser of adjoining land, to whom it was made, it must clearly appear that the statement was a controlling factor relied on by the purchaser at the time of the purchase.

3. Same—Boundaries—Estoppel — Evidence.—Evidence held not to so clearly show that a statement of a landowner that he would set back his boundary fence to the line recited by his deed and exclude a disputed strip, made to the purchaser relied on by him at the time of his purchase as to make it operate as an estoppel against the one making it.

4. Trespass—Title of Plaintiff—Burden of Proof.—In an action for the value of timber cut from a strip of land alleged to belong to plaintiff, where the answer substantially put in issue plaintiff's title to the strip, alleging it to be in defendant, the burden of proof was on plaintiff to prove his title.

5. Boundaries—Evidence to Establish—Common Source of Title.—Where there was an issue as to title to a strip of land depending upon the location of the division line between the parties' land, and they both claimed under the same common vendor, plaintiff, to establish his title, having intro-

Warden v. Addington.

duced the deeds under which defendant claimed, apparently to show that they did not include the land, it was not necessary for him to introduce deeds showing the title in himself.

6. New Trial—Motion—Clerical Errors—Surplusage.—Where instructions 1, 2, and A were complained of in the grounds for a new trial, and it was recited that defendant objected and excepted to them at the time, but instruction A was given for defendant, so that he, of course, did not object to it, and it appeared that he did object to instruction K and excepted to its being given at the time, the letter "A" will be considered a clerical error for "K," and disregarded; the rule being that, where a thing is otherwise sufficiently identified, a false description by a clerical error will be rejected as susplusage.

7. Frauds, Statute of—Real Property—Agreement as to Boundaries.—Where there is a dispute between adjoining owners as to their dividing line, and they locate the line by agreement, based upon consideration and executed by marking the line or taking possession under it, the agreement is not within the statute of frauds.

8. Boundaries — Establishment — Agreement Between Owners— Effect.—There being a dispute in good faith between adjoining landowners as to the true boundary between their lands, they agreed upon a settlement, fixing a line which they marked by corner trees at its ends and line trees along its course, and each took possession up to that line. A fence begun by one of them within the disputed strip was moved back to the agreed line, and a fence along that line has since been maintained for about 100 rods; the remaining 50 rods not being inclosed, though marked. Held, that the agreement fixing the boundary was binding on the parties to it.

9. Same — Boundaries — Establishment — Agreement Between Landowners—Notice.—An agreement between adjoining owners, fixing their boundary, executed either by a marked line or by actual adverse possession, carries notice to all the world of the fact.

10. Notice—Nature.—Notice may be the existence of that which, if looked at or listened to, and then followed up by such inquiry as ordinary prudence would suggest, would result in obtaining the knowledge sought to be charged.

11. Boundaries — Agreement Between Landowners — Effect of Privies in Estate.—As a person holding a deed to land, some of which he has parted with, cannot convey more than he has, the executed agreement of the landowners, altering the boundary line between them, which was notice to their privies

Warden v. Addington.

in estate, was binding on them, and the privy of the one yielding up part of the land described in his deed was bound thereby, though he had no actual knowledge of the agreement.

12. Adverse Possession—Actual Possession of Land.—If the privy of the party receiving an additional piece of land under the agreement had been in actual possession thereof, or of any part thereof, for 15 years, the privy of the other party to the agreement was barred from recovering it, whether or not the agreement fixing the boundary was valid.

13. Deeds — Recorded Deeds — Effect.—While by law deeds of record convey notice of their existence and contents, and are constructively known to those whose duty it is to inquire as to their existence, they do not supersede adverse possession, or any other extrinsic matter on the ground, which imports notice of the existence of a fact contrary to one imported by the deed.

M. L. HEAVRIN and J. P. SANDEFOR for appellant.

The appellant contends:

1. That the verdict of the jury and judgment rendered thereon is not sustained by the evidence.

2. That the instructions given by the court are not the law, and were prejudicial to appellant's substantial rights.

### AUTHORITIES.

Stillwell v. Duncan, 44 S. W. 357; Patterson v. T. J. Moss Tie Company, &c., 71 S. W. 930.

G. B. LIKENS for appellee.

J. S. GLENN of counsel.

### POINTS DISCUSSED AND AUTHORITIES CITED.

1. The amount involved being less than $200.00, and the pleadings not being sufficient to involve the title the appeal should be dismissed. (Ponder et al. v. Lard, 44 S. W. 138, 102 Ky 605.)

2. Unless appellee had actual knowledge of the oral agreement made by the remote vendor he is not bound. (Young v. Duggins, 30 Ky. Law Rep. 634.)

3. Objections to the instructions of the trial court can not be aised here because they were not made grounds for a new trial,

Warden v. Addington.

and the party can not complain of an instruction given on his own motion.  (Louisville, Cincinnati & Lexington Railroad Company v. Mahoney, 7 Bush 235; McLean v. Dibble, 13 Bush 297.)

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.                              j

A. J. Addington brought this suit against C. T. Warden, charging. that he was the owner and in adverse possession of a certain tract of land in Ohio county, and that Warden had forcibly entered upon the land and cut and removed certain trees of the value of $55.  He prayed judgment for $55 and his costs.  The defendant filed an answer, in which he denied that he had cut any trees on the plaintiff's land, and alleged that about 33 years ago there was a controversy between S. K. Bishop, who then owned the tract of land now owned by him, and S. A. Field, who then owned the tract of land now owned by Addington, and in order to settle the controversy they established a line between their lands by agreement, and that he and those under whom he claimed had been in actual adverse possession of the land on his side of the agreed line for more than 30 years.  By an amended answer he alleged that he was the owner of a certain tract of land in Ohio county, described in the answer by metes and bounds, of which he and his vendors had been in actual adverse possession for more than 30 years, and he alleged that this tract included the land from which the timber was cut.  The plaintiff controverted the allegations of the amended answer, and, the case being heard before a jury, there was a verdict and judgment in favor of the plaintiff in the sum of $33.  The defendant appeals.

The first question made on the appeal is that this court has not jurisdiction, because the judgment is

for less than $200. While the judgment is less than $200, the effect·of the judgment under the pleading is to determine that the plaintiff owns the strip of land in controversy; and, this being true the appeal lies in this court, as it has jurisdiction where the title to land is involved, without regard to the amount in controversy. The deeds to the parties for the land claimed by them are not copied in the record, but we gather from the transcript that the following are in substance the facts of the controversy: On March 7, 1862, S. A. Field and wife, who then owned a large boundary, conveyed to William and B. C. Warden 271 acres of land. William and B. C. Warden on September 26, 1868, conveyed to Samuel K. Bishop 90 acres of the land conveyed to them by Field. Appellant, Warden, claims under S. K. Bishop. Addington claims under S. A. Field. After the deed was made to S. K. Bishop in 1868, it was discovered by him and Field that there had been a mistake made in running the division line between them. They then got a surveyor and had a new line run, which cut off to Bishop 6 or 7 acres more than was included in the boundary described in his deed, but being the quantity originally conveyed. Field set his fence back, and from that time on, according to the defendant's proof, they and those claiming under them, held possession to the line so established. One of the witnesses states the facts in these words: "Why, after the dispute came up, and they found there was not enough land there, and they first measured the ground, and found that it didn't come out as it should on the side, same number of poles on one end as the other, and they got a surveyor, and surveyed the line through, and agreed on the line, and Mr. Field moved back his fence at that time. Mr. Field commenced clearing where the corner

of his line is, and he had started to build the fence before they made this survey; and then they made this survey and marked these lines, and Mr. Field moved the fence back, and this line was agreed on as being the line.''

On the other hand, there was evidence for the plaintiff to the effect that the line was not recognized, and in the deed made afterward by Field to Addington the original line was called for. Addington testified that some three or four years before he bought he told Warden that his fence was over the line, and Warden said he would set his fence back to the line of the deed. Warden denied having had this conversation. Addington had bought part of the land, as he alleged, relying upon this statement of Warden. But to constitute an estoppel the evidence should be clear that the matter relied on in the plea was a controlling factor relied on by the purchaser at the time of his purchase. The evidence in this case falls short of that test. Addington also proved that Warden had told several persons that this strip of land was in dispute, and that, while he claimed it, he would not convey more than was included in his deed—90 acres conveyed to Bishop, which he asserted in fact included the disputed strip; and on these facts the court instructed the jury as follows:

(1) ''The court instructs the jury that if they believe from the evidence that the defendant unlawfully and forcibly entered upon the lands of the plaintiff in 1904, and cut and removed hickory and gum trees from said land belonging to the plaintiff, which were worth $55, or any sum, then the jury should find for the plaintiff such damages as he sustained, not exceeding $55.''

(2) ''The court further instructs the jury that if

they do not believe from the evidence as supposed in instruction one, or they believe from the evidence that the timber cut by defendant was on his own land, or land of another other than plaintiff, then the jury should find for the defendant, and so state in their verdict.''

(K) ''The court instructs the jury that, unless at the time he bought the plaintiff had actual knowledge of the alleged agreement between Field and Bishop as to the division line between their lands, then the plaintiff is not bound thereby.''

(A) ''The court instructs the jury that, if they believe from the evidence that defendant was in the adverse possession of the whole of the land from which the timber was cut at the time plaintiff purchased his tract of land, they shall find for the defendant.''

While the answer is inartfully drawn, it substantially puts in issue the plaintiff's title to the strip in controversy, and alleges the title to be in defendant. The burden of proof in the case was therefore on the plaintiff. Young v. Duggin, 99 S. W. 655, 30 Ky. Law Rep. 334. As the record is presented to us, the plaintiff read in evidence the deeds under which the defendant claimed, apparently for the purpose of showing that they did not include the land. But it does not appear from the record that he read in evidence any deeds showing that the title to the lands was in him. Nor was it necessary to do so, as both parties claimed under the same common vendor. The issue as to title was solely the location of the division line between these litigants' lands. But, aside from this, instruction K is in substance a peremptory instruction for the jury to find for the plaintiff, as there was no evidence introduced showing that plaintiff had actual knowledge of the

Warden v. Addington.

agreement between Field and Bishop as to the division line made over 30 years before the trial, and long before he had any interest in the land, although there was evidence tending to show that he had notice, when he purchased, of the defendant's claim to the land up to this agreed line.

Counsel insist that instruction K is warranted by Young v. Duggin, 99 S. W. 657, 30 Ky. Law Rep. 336, where the court said: "When appellant went to the record to see what Quast and Schulten owned of the Schroader (215-acre) patent, he saw that appellee only claimed (as shown by his deed) toward the south-east to Schroader's line ('E-F' on the plat). This informed him that he could safely buy of the Schroa-der patent to the northwest as far as line 'E-F' on the plat. This he did in purchasing the 80 acres measured off the northwest corner of the Schroader 215-acre survey; and, unless he had actual knowledge of appellee's claim to own below that line, the latter is estopped as against him to claim the land in ques-tion." The court used the word "knowledge" as synonymous with "notice," as distinguished from con-structive notice. There is a very material difference between actual knowledge or notice of the defendant's claim to the land, and actual knowledge of the orig-inal agreement between the remote grantors which gave rise to it.

It is insisted for the appellee that the appellant can not complain of instruction K, because it is not men-tioned in the grounds for a new trial. In the grounds for a new trial, instructions 1, 2, and A are com-plained of, and it is added that the defendant objected and excepted to them at the time. Instruction A was given on the motion of the defendant. He did not, of course, object to it. He did object to instruction K,

and excepted to its being given at the time. We must conclude that the letter "A" in the grounds for a new trial is a clerical error for "K." The rule is that, where a thing is otherwise sufficiently identified, a false description by a clerical error will be rejected as surplusage.

It has been held by this court that where there is a dispute between two adjoining owners as to a dividing line between them, and they by agreement locate the line, the agreement is not within the statute of frauds, upon the idea that the parties have simply by agreement settled the location of the line which was in doubt, instead of having the court settle it for them. Amburgy v. Burt & Brabb Lumber Co., 121 Ky. 580, 89 S. W. 680, 28 Ky. Law Rep. 551. Young v. Duggin, supra, was an entirely different case from this one. There the only question was the true location of a line. No question of title by adverse possession within the disputed territory, nor any agreement between the adjoining owners fixing and making the dividing line between their lands, was involved.

It is insisted here that there was not such a dispute as brings this case within the rule which sustains such parol agreements. We will first review the cases which hold that such agreements are enforceable, and then apply the facts of this case.

The first case in this State on that subject is William Ward v. Simon Kenton (Ky.), Dec. 3, where it was said: "It has never been doubted but that a conditional or dividing line, agreed on by claimants of land, would equally bind the assignee of either of them."

In Brown v. Crow's Heirs, Ky., Dec. 108, it appears that Brown had made a survey of land, whilst an adjacent claimant, Crow, had none covering the plot

in dispute. Previously they had agreed to a division line as to the locations to be made by them respectively of their adjoining tracts, which, if enforced, would establish Crow's line so as to include the disputed land within his claim. The court said: ''Agreements entered into to settle boundaries have been carried into effect in the case of grants made by the crown of Great Britain for lands in America. Penn v. Lord Baltimore, 1 Ves. 445.'' And the parol agreement was upheld by this court in that case.

In Robinson v. Corn, 2 Bibb, 124, the owners of adjoining lands, whose boundaries conflicted, agreed in parol to establish the dividing line half way between their improvements. But the agreement was not executed, and the line was not marked. The unexecuted agreement was held to be within the statute of frauds, and was rejected.

In Jamison v. Petit, 6 Bush, 669, while the facts are meagerly stated, it is said that ''a parol agreement fixing the dividing line between the adjoining lands of the antagonist parties, not being within the statute of frauds and perjuries, was specifically enforceable in equity, and this equitable matter, if established as a defense, would have defeated the action of ejectment. By Civil Code Practice, section 113, subsection 2, equitable defenses may now be interposed in actions at law.

In Grigsby v. Combs, 21 S. W. 37, 14 Ky. Law Rep. 651, the question was as to the validity of an executed parol agreement fixing an agreed line between adjoining lands of the owners, whereby each relinquished a part within his deed to the other. It was contended that it was a mere 'swap'' of lands, and, not being in writing, was void. The court responded: ''We are of opinion, however, that both in principle and by author-

ity an agreement of this nature can be upheld. It is no more a 'swap' of lands than results by reason of 'agreed corners' between neighbors, or 'agreed division fences,' and these amicable arrangements have been sanctioned by repeated adjudications. In Robinson v. Corn, 2 Bibb 124, the contrary doctrine is seemingly announced; but the argument of the court in that case is directed solely against the sufficiency of the proof establishing the agreed line. 'Neither party,' says the court, 'seems to have acted under the faith of the supposed agreement.' "

We had occasion in Amburgy v. Burt & Brabb Lumber Co., supra, to examine these and other cases on this subject. It was there pointel out that such agreement, when based upon consideration and executed, was not within the statute of frauds and perjuries. but where without such consideration, and where the agreement was not executed by marking the line, or taking possession under it, it was within the statute.

In Frazier v. Mineral Development Co., 86 S. W. 983, 27 Ky. Law Rep. 815, a parol agreement fixing a dividing line, so as to settle a dispute as to its true location, was upheld, when it had been executed by building fences along the agreed line and each party taking possession of the part allotted to him by the agreement. The court said "It has long been the settled policy of the courts of this State to approve and uphold such agreements as tending to discourage controversies between neighboring landowners and prevent litigation." It did not appear in that case how long each party had been in the actual possession of the parcel which he got by the agreement. Of this feature of the case the court said: "We do not, however, understand that 15 years' recognition of the agreed line by the parties was necessary to authorize

the chancellor to grant the relief asked in the case at bar. It is sufficient that, after agreeing upon the line, Joseph Frazier and Philip Hall, as long as the former lived and the latter remained the owner of the land included in the Eli Hall patent, continued to recognize and treat it as the line dividing their lands, and that subsequent purchasers from either of them were led by their agreement and conduct to so regard it."

In Ball v. Loughridge, 100 S. W. 275, 30 Ky Law Rep. 1123, it was said: "Independently of the deed, the location of the dividing line by the parties may be proved to show the extent of their possession, and as a circumstance evidencing how they located their grants. Where a dividing line is made by parol to settle a dispute in good faith between the parties, and is recognized for years and acquiesced in as a dividing line between them, it will not be disturbed, although the agreement is not in writing."

In Fields v. Sizemore, 105 S. W. 438, 32 Ky. Law Rep. 237, it appears that there was a dispute between owners of adjoining tracts as to the correct location of the dividing line between them. They agreed by parol to make a dividing ridge the line. The agreed line does not appear to have been marked. Each party lived upon his tract, and after the agreement each exercised acts of ownership over the land only up to the agreed line, which was uninclosed woodland. This acquiescence continued for 20 or 25 years. Each subsequently sold his land; one of them by his deed attempting to ignore the agreed line, and conveyed to the calls of his original boundary. This court held the agreement to be binding upon both parties to it and upon their privies in estate. Grider v. Davenport, 60 S. W. 866, 22 Ky. Law Rep. 1455, was thus quoted approvingly: "Although the true location of the line

may not have been at the place now claimed by appellees, still, if the parties owning the tract of land recognized it as such, and the appellees and those under whom they claim held possession of it, and claimed to the line for 15 years, the appellant's right to question the location of the line is barred."

There are a number of other opinions of this court, and of the supreme courts of other States, to the same effect as the foregoing authorities, but those cited are deemed sufficient to establish the rule applicable to this case.

The proof shows that, not only was there a dispute in good faith between the former owners of these adjoining tracts, but that they agreed upon a settlement of the dispute. They fixed the line now claimed by appellant as the true dividing line between their lands. They marked the line by marking corner trees at its ends and line of trees along its course. A fence begun by one of them within the disputed territory was moved back to the agreed line, and a fence along that line has since been maintained for about 100 rods. The remaining 50 rods of that line is not inclosed, though marked. Appellant and his vendor have for more than 30 years claimed the land up to the agreed line, using all of it as occasion demanded; some of it being cultivated close to the fence. Appellee, before he purchased his tract, rented the land, including that in dispute, from appellant, and also rented at other times the land which he subsequently bought, but did not then, nor did his landlord, exercise any ownership or act of dominion over the strip now in dispute. Appellant's grantor had been conveyed 90 acres of land by the owner of the tract now claimed by him. He soon discovered that there was a mistake in one of the calls of his deed, so that run

one way, and properly literally, he would not get the quantity he had bought. If run another way he would get what he bought. He and his vendor went upon the ground, settled their dispute, and established the true running of the line between them. That was a dispute in good faith. It was a valuable consideration to support the agreement, as much so as would have been a mutual exchange of lands lying on each side of the agreed line. The true line was then marked, and each party took possession up to that line, and no further. We think the case comes well within the line of cases above noted, and that the agreement so executed was binding upon the parties to it.

Is it binding upon their privies in estate? In the light of the authorities cited and quoted from, and upon principle, we think it is. A man can convey no greater estate in land than he has. Although he may have a deed embracing a particular boundary, if he has in the meantime parted with title to part of it, voluntarily or involuntarily, a subsequent purchaser from him gets only what he then owned. If he by parol has created an equity only, an innocent purchaser without notice may be protected as against such equity. But the quality of the transaction which we are here investigating, from the very necessity of its constituent elements, carries notice to all the world of the fact; for, unless it is executed, it is invalid. If executed, it is done in one of two ways: (1) By a marked line; or (2) by an actual adverse possession under it. Notice may be the existence of that which, if looked at or listened to, and then followed up by such inquiry as ordinary prudence would suggest, would result in obtaining the knowledge sought to be charged. Actual adverse possession is always notice of its nature and of the fact. A marked line is notice.

The reason it was marked was to notify the world that the person for whom it was marked claimed a title to that point. It is the oldest method of notifying the world of ownership of the claimant. It was in vogue centuries before the Christian era, and when few people could write, long before deeds were thought of. In every country where individual ownership in land is allowed, monuments to mark the boundaries of the owner, to notify all persons that he claims so far, are in use, and have always been. Possession, the highest form of notice, may be limited to, or generally referable to, such monuments. So we say, when he enters and settles upon land, claiming it as his own, his possession, unless in exceptional instances, is coextensive with the marked boundary of his tract. Such possession alone will in time toll even the superior legal right, and establish the possessor as owner in spite of the former owner's valid grant to the land. It would be a new doctrine to hold that, although one having a deed of record may have lost his title by the continued adverse possession for 15 years of another originally without title, yet the former owner could sell and pass the perfect title to a stranger, who did not know that the title had been lost.

By law, deeds of record convey notice. They may be examined to learn the state of a title; and, whether examined or not, their existence and contents are constructively known to those whose duty it was to have inquired as to their existence. But such deeds do not supersede adverse possession, or any other extrinsic matter on the ground, which imports notice of the existence of a fact contrary to one imported by the deed. The deed is notice of what it contains. So are marked lines notice of what they stand for in law. The call of a deed may indicate the ownership of a

Warden v. Addington.

plot of ground of a particular shape. The actual marked lines of the same plot may be materially different; and, if they are, they control—the calls of the deed to the contrary notwithstanding.

Instruction K in this case was therefore erroneous; for, whether Addington had actual knowledge of the agreement and division line established between his vendor and appellants, he is bound if it was an executed agreement, and he is barred, whether or not it was valid, if appellant and his vendors had been in actual possession of the land on appellant's side of the line for more than 15 years before the bringing of the suit. The instructions in this case should have been limited to submitting to the jury whether the agreed line had been established, and whether it had been executed as herein indicated. If it had been, then the verdict must be for the appellant. Or, if appellant and his vendors have been in the continuous actual adverse possession of the land in dispute, or any part of it, claiming to a well-defined marked boundary, for more than 15 years before this suit, then as to such part the plaintiff could not recover. There is no question of an estoppel under the proof.

The trial court rejected evidence at the trial of the claims of title and extent of possession made by appellant and his vendors of the disputed strip. The excluded evidence is relevant.

The judgment is reversed, and cause remanded for a new trial under proceedings consistent herewith.