## Holbrooks, et al. v. Wright, et al.

(Decided November 14, 1919.)

### Appeal from Letcher Circuit Court.

1.  Frauds, Statute of—Agreement Establishing Boundary.—Where the dividing line is uncertain and there is a bona fide dispute as to its location between adjoining landowners, who agree on the dividing line and execute the agreement by marking the line or building a fence thereon, such agreement is not prohibited by the statute of frauds. nor is it within the meaning of the provisions of the law regulating the manner of conveying real estate, since the parties do not thereby undertake to acquire and pass title to real estate, as must be done by written contract or conveyance, but simply by agreement to fix and determine the situation and location of the thing that they already own, the purpose being to identify their several holdings by something agreed on, and to make certain that which they regarded as uncertain.

2. Boundaries—Agreement—Possession Thereunder.—An agreement fixing boundaries, followed by possession with reference to the boundary so fixed, is conclusive on the parties, although the possession may not have been for the full statutory period, it being sufficient to show that the dividing line was actually established, and thereafter recognized and acquiesced in by the parties for a considerable time.

3. Boundaries—Action—Agreement—Evidence.—In certain consolidated actions involving the title to land, evidence considered and held to show that the grantors of plaintiffs and defendants agreed upon and established a dividing line between their farms.

FELIX G. FIELDS, R. MONROE FIELDS, D. D. FIELDS and G. W. KILGORE for appellants.

W. H. MAY, DAVID HAYS, L. E. HARVIE, S. E. BAKER, JESSE MORGAN and EDWARD C. O'REAR for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This is an appeal from the judgment of the Letcher circuit court in four consolidated actions, and the principal question presented is whether Joseph Craft and Joel Wright agreed on the division line between their lands.

The first suit was an ordinary action brought by Samuel J. Wright against the Burt & Brabb Lumber Company to recover $450.00 as the value of forty-five poplar trees alleged to have been cut and removed by the defendant from a tract of land owned by plaintiff and described in the petition. Thereafter, a second suit, which was likewise an ordinary action, was brought by Samuel J. Wright against the Burt & Brabb Lumber Company and others, seeking to recover the sum of $288.00 as the value of twenty-four marketable trees alleged to have been cut and removed by the defendant from lands claimed to have been owned by the plaintiff and described in the petition. The third suit was an ordinary action instituted by the Northern Coal & Coke Company and Samuel J. Wright against the Burt & Brabb Lumber Company and A. B. Potter, defendants, to recover the sum of $2,060.00 as the value of 186 saw logs. In each of these cases, F. M. Osborne and wife filed a petition, asking to be made parties defendant, and alleging that they owned a nine-tenths interest in the timber in controversy, and seeking to recover that por-

tion of the value of the timber. The fourth suit was an
equitable action by George W. Holbrooks and wife, and
F. M. Osborne and wife, against Samuel J. Wright and
the Consolidation Coal Company, to quiet their title to
the lands from which the timber was cut. The evidence
was taken by deposition, and the parties agreed that the
depositions in each case should be read in all the cases.
On final hearing the court was of the opinion that no
dividing line between the lands of Joseph Craft and Joel
Wright had been fixed and marked between the lands in
controversy, and entered a judgment adjusting the rights
of the parties on that basis. George W. Holbrooks and
wife, F. M. Osborne and wife, A. B. Potter and Burt &
Brabb Lumber Company appeal.

Joseph Craft and Joel Wright were brothers-in-
law, and occupied adjacent farms in Letcher county on
the north fork of the Kentucky river. Craft lived at the
mouth of Laurel branch on the west, and Wright lived at
the mouth of Holbrooks branch on the east. Their homes
were about a mile a part. Craft and Wright moved on
the lands some time in the early "forties." At that time
the lands were wild and uncultivated, with the exception
of a little space here and there. The patents, which Craft
and Wright procured, covered the lands lying on both
sides of the north fork of the Kentucky river. A short
distance from the south side of the river there is a ridge
which runs south until it reaches almost to the limestone
cliff, which is near the top of Cumberland mountain. At
the base of this cliff there is a bench which runs north
and south, and constitutes a watershed running from the
beginning of the formation to the limestone cliff. This
ridge divides the waters of the Laurel branch on the west
from the waters of Holbrooks branch on the east. At
the top of the limestone cliff, there is a second flat or
bench, called "Big Bench," which extends south to with-
in a few hundred feet of the top of the mountain. It is
the contention of appellants that the agreed line, called
the "conditional line," begins at a beech and sycamore
standing on the south bank of the north fork of the Ken-
tucky river, about half way between the mouth of Laurel
branch and the mouth of Holbrooks branch; thence run-
ning south with an old fence across a narrow bottom;
thence in the same direction up a hill a short distance to
a beech; thence with the top of the ridge to a sugar tree
on the north edge of the upper "Big Bench" above the

limestone cliff; thence a straight line to the top of Cumberland mountain. It appears that the patents laid by Craft and Wright overlapped at certain places, but that with respect to the lands in controversy Wright's patents are older than Craft's.

For appellants, Sam Webb testified that he was at his uncle Joe Craft's cutting oats. Joel Wright came up, and after asking witness if he knew whose land he was working on, said that the fence was the conditional line; that the line ran to the top of the mountain and to the top of the ridge on the other side. Joel Wright stated that the reason he and Craft had made the line was that he had a little land that lapped on Craft, and Craft had a little that lapped on him. At that time Wright and Craft were on friendly terms, though they had had a dispute over their land prior to that time. John A. Craft, a son of Joseph Craft, testified that he had heard his father and Joel Wright talk about the conditional line between their farms some time in the "fifties" and before the year 1862, and according to their talk, the line ran from the sycamore and beech up to the top of Cumberland mountain. As he understood it, all the land on the west side of this line was his father's, and the land on the east side was Joel Wright's. No one but his father and his father's tenants ever claimed or occupied the land west of the agreed line between the years 1849 and 1880. He did not know whether there was any marked timber between the beech which stood on the hillside and the top of the spur, but all the way up the spur to the "Big Bench" of the mountain, the line ran with the watershed or top of the ridge, and could be easily found. J. N. Webb stated that he had known Wright and Craft ever since he could recollect, and had often been over the land where they lived. His uncle, Joseph Craft, willed his land to his children, and witness and his uncle, Wiley Webb, witnessed the will. At that time his uncle, Joseph Craft, stated that he and Wright had made a conditional line, which ran across from top to top. He had also heard Joel Wright say that was the conditional line between him and Craft. E. T. Webb stated that he knew Joel Wright and Joseph Craft a lifetime, and worked for them. About forty-seven or forty-eight years before he testified, he was cutting timber for Joseph Craft. Craft showed him where to cut, and stated that his line ran up the spur. He told witness not to cut on

the other side. W. R. Craft, another son of Joseph Craft, stated that he moved on the farm on Laurel branch about the year 1849, and lived there until 1881. He stated that he had often heard his father speak of the conditional line, and fixed the line according to the location claimed by appellants. Hiram Wright testified that just before the war Joel Wright told him where the conditional line was between him and Joseph Craft, and fixed the line at the place now claimed by appellants. In his first deposition, Wilburn Greer filed a map showing the land in litigation, and stated that the conditional line between the lands of Joseph Craft and Joel Wright was correctly shown on the map to the best of his knowledge. He first heard of the conditional line when Joseph Craft put him in possession of the land about the year 1878. The greater part of the conditional line runs along the top of the ridge between the waters of Laurel branch and the waters of Holbrooks branch. During the time that he was acquainted with the land, no one except Joseph Craft, and those claiming under him, used any of the land on Laurel branch and tinted in yellow on the map. David Blair, a surveyor, testified that he traced the conditional line from the point marked "A" on the map, up the ridge to the point marked by black letters "D. B." Farther up the mountain he found a marked sugar tree on the lower edge of the upper "Big Bench" of the mountain. The sugar tree was marked with three axe marks on the south side of the tree, and three axe marks on the north side. It was marked to agree with the conditional line. From other observations he concluded that the marks must have been somewhere about fifty years old. He could not distinguish any difference in the marks on the beech at the river and those on the sugar tree. He traced the line from the sugar tree on to the top of the mountain for a distance of about 960 feet. A portion of the Joseph Craft survey of January 23, 1860, lies east of the conditional line. The fence is located along what is said to be the conditional line. A portion of the Joseph Craft 200 acre survey of September 20, 1854, lies east of the conditional line. S. H. Fields, a surveyor, after describing the conditional line on his map, testified that it was a marked line up to the point indicated by "2 Sug. & D. Wood at dividing point bet. Wright and Craft," but did not remember whether the line was marked above that point or not. In his

opinion, the marks were over thirty years of age. There was a small boundary south of the Joel Wright 200 acre survey of March 19, 1869, and south of the Joseph Craft 200 acres survey of April 20, 1869, which was not covered by any patent. The Joseph Craft patent for 200 acres, dated September 20, 1854, extended beyond the conditional line. Numerous patents obtained by Joel Wright and Joseph Craft were filed, and their position on the map explained.

In 1881, Joseph Craft conveyed the lands in controversy to Wilburn Greer and Nancy Greer. The habendum of the deed contained the following: "To have and to hold all the land I own within the above described boundary with its appurtenances to the said Wilburn Greer and Nancy Greer," etc. In his second deposition, Greer stated that his father-in-law had told him he did not know whether he owned all the land inside the boundary or not. At first the witness took possession of the whole boundary, but later relinquished his claim and possession to part of it, because of the claim of Joel Wright. Witness further stated that when he went to make a deed to Holbrooks, his father-in-law told him not to convey all the land as it might get him into trouble. One time he was present when Joel Wright and Joseph Craft sent for their patents to determine where their lines were. Craft claimed that Wright should not run across the top of the ridge, but the parties went and ran the lines of the Joseph Craft patent to the beech and lynn on the branch, which was on the west side of the ridge. Samuel J. Wright testified that he had never heard of any agreed line between his father, Joel Wright, and Joseph Craft; that there were only a few marks on the top of the ridge and they were corner trees to old patents; that no agreed line was ever marked, and that all the marking done along that ridge was by later surveys made since his father's death. He further stated that he was present on the occasion referred to by Wilburn Greer, and corroborated Greer as to what then took place. On cross-examination, however, witness was asked the following question: "I will ask you to state, Mr. Wright, whether this division line, so far as you know, this division line between Joseph Craft and Joel Wright, is the western boundary line of your sister Susan's land from where it strikes that line on up to the top of the mountain?". Whereupon, witness replied: "It is the

western boundary line of the land conveyed by the heirs to Susan Wright." J. Martin Wright, a son of Joel Wright, also corroborated Greer as to what took place between Joseph Craft and Joel Wright when the discussion over their patents arose. He further stated that he had never heard his father recognize any division or conditional line made by him and his uncle Joseph Craft, nor had he ever heard his uncle Joseph Craft claim that he and his father had made a division line. Alexander Venters, another witness for appellees, corroborates the other witnesses as to the conversation between Joel Wright and Joseph Craft at the time their lines were run across the hill. James P. Marrs stated that he was an intimate friend of the families of both Joel Wright and Joseph Craft. At one time he and W. H. Nickles bought some poplar timber from Randolph Holbrooks, a vendee of Joseph Craft, standing just below the limestone cliff on the land in controversy. After they made the purchase it developed that Joseph Craft's patent did not cover it. A surveyor was sent for and the land run out, and Holbrooks let witness and Nickles have other timber to make up for that standing on Wright's patent boundary. The timber deed was made to Marrs and Nickles on August 14, 1889, ten years after Joel Wright died. He further stated that he wrote the deed from Joseph Craft to Wilburn Greer. The question arose as to whether Joseph Craft owned all the land described in the deed. Mrs. Craft suggested that they make a quit claim deed for fear they might not own all the land up there, and might be sued on their warranty. The widow and children of Randolph Holbrooks, the vendee of Wilburn Greer, stated that they never claimed to own, or asserted any title to, that part of the land covered by the Joel Wright patent. Susan Mullins, a sister of Samuel J. Wright and a daughter of Joel Wright, testified that she knew nothing of any conditional line between her father and Joseph Craft, and that her father had told her that they had never made any conditional line. She further stated that she had never heard her uncle Joseph Craft, or any of his children, say anything about a conditional line between him and her father. John W. Wright, a son of Joel Wright, stated that he never heard of any conditional line between his father and Joseph Craft, and that he never saw any marked timber along said line until after he

had made some surveys. He admitted, however, that he afterwards took out a patent for his father which called for the conditional line.

Appellants further proved by a number of witnesses that Susan Mullins (Susan Venters) told them that there was a division line between her father, Joel Wright, and her uncle Joseph Craft, and stated where the line was. J. Dixon Craft also stated that J. Martin Wright told him of the conditional line and pointed it out to him as they were going up the mountain.

In addition to the foregoing evidence, we find that certain patents, surveys and deeds call for the division line. On the north side of the river the Joel Wright 200 acre survey of April 15, 1873, contains the following call: "Beginning on the north side of sd. river on top of the spur below a little branch that runs in at the conditional line between sd. right and Joseph Craft, about 30 poles from sd. river on 2 black oaks and 2 hickories and a W. oak; N. 76 W. 26 po. to a chestnut oak, spotted oak, and sour oak." On the south side of the river, the Joel Wright 50 acre survey of April 15th, 1873, contains the following call: "Thence at a conditional line between sd. Right and Joseph Craft; thence with said line N. 31 W. 20 poles to a beech."

The Joseph Craft 100 acre survey of April 14, 1873, contains the following call: "Beginning on the south side of sd. river about 30 po. from sd. river on the side of a hill on a sugar tree, d. wood and W. oak to a conditional line between sd. Craft and Joel Rite; thence running with said conditional line N. 12 W. 34 po. to a W. oak on the north bank of sd. river."

The Joel Wright 200 acre survey of April 19, 1869, which is located on the upper "Big Bench" of Cumberland mountain, contains the following: "Beginning on the bench of said mountain on a dividing point between said Wright and Joseph Craft in a line of a 100 acre survey made in the name of said Wright on two sugar trees and dogwood, thence," etc.

On March 6, 1882, the heirs of Joel Wright made a deed for certain lands to their mother, Eliza Wright. The description begins as follows: "Beginning at a conditional line made between Joseph Craft, Sr., and Joel Wright, deceased, thence with said line southward to the top of the hill." The last call is: "Thence back with the top of said ridge to the conditional line made between Joseph Craft and Joel Wright, deceased."

On March 6, 1882, the heirs of Joel Wright convey-
ed certain lands to their sister, Susan Wright. The deed
contains the following: "Beginning at the mouth of
Lick fork of Holbrooks branch and running thence up
the right hand point to the divide between Joel Wright
and Joseph Craft, and thence," etc.

On February 17, 1881, Joseph Craft and wife con-
veyed a tract of land to Vincent Boreing. One of the
calls of this deed is as follows: "Thence S. 70 E. 38
poles to chestnut oak and two hickory saplings, thence
S. 29 E. 19 poles to a chestnut oak sourwood on the
agreed line between the said Joseph Craft, Sen., and Joel
Wright's heirs."

On January 17, 1890, George Venters and Susan
Venters (formerly Susan Wright) conveyed to George
F. Cross certain timber located on certain land. The
first call of this deed is: "Beginning at the mouth of
Lick fork of Holbrooks branch, and running thence up
the right hand point to the divide between Joel Wright
and Joseph Craft."

Where the dividing line is uncertain and there is a
*bona fide* dispute as to its location between adjoining
landowners, who agree on the dividing line and execute
the agreement by marking the line or building a fence
thereon, such agreement is not prohibited by the statute
of frauds, nor is it within the meaning of the provisions
of the law regulating the manner of conveying real es-
tate, since the parties do not thereby undertake to ac-
quire and pass title to real estate, as must be done by
written contract or conveyance, but simply by agreement
fix and determine the situation and location of the thing
that they already own, the purpose being to identify their
several holdings by something agreed on, and to make
certain that which they regarded as uncertain. And such
an agreement, followed by possession with reference to
the boundary so fixed, is conclusive on the parties, al-
though the possession may not have been for the full
statutory period, it being sufficient to show that the di-
viding line was actually established, and thereafter
recognized or acquiesced in by the parties for a con-
siderable time. Garvin v. Threlkeld, 173 Ky. 262, 190 S.
W. 1092.

Since Greer and the Holbrooks were engaged in an
effort to slander their own title, and since the Wright
heirs were either interested, or related to those who were

interested, in the outcome of the case, and were impeached by a number of witnesses and circumstances, and since the sons of Joseph Craft, who were no longer interested in the matter, and were in a position to know, testified to the agreement fixing the dividing line, and to the subsequent acquiescence therein by the parties, it may be doubted if the oral testimony alone is not sufficient to show that the chancellor erred in his conclusion. But there is other evidence of even a more persuasive character. At various points covering a distance of about a mile, the agreed line is called for by patent after patent, and deed after deed. Three of these patents were taken out by Joel Wright and one of them by Joseph Craft. Several of the deeds were executed by the Wright heirs, who now claim that no conditional line was ever established. Not only so, but the eastern boundary of the land conveyed by Joseph Craft to Wilburn Greer coincides with the agreed line; and though it be true that Craft conveyed only the land which he owned in that boundary, we do not regard this circumstance as of controlling importance, in view of the fact that there was a small tract of unpatented land in the boundary, and Joseph Craft was therefore unwilling to warrant the entire title. It appears that the top of the ridge itself made a clear dividing line between the lands, and that the line along the ridge was marked for almost the entire distance. When we consider that Joseph Craft and Joel Wright were brothers-in-law, and lived on adjoining farms, that their claims and patents overlapped, that they took out patents calling for the agreed line, that they acquiesced in the location of the agreed line until their deaths, that the Wright heirs recognized the line by the deeds which they executed, that the land on the west side of the dividing line was occupied by appellants and those under whom they claim, and that no effort was made by appellees or those under whom they claim to take actual possession of any land on the western side of the ridge until many years after the death of both Joel Wright and Joseph Craft, we conclude that the evidence clearly shows that Joseph Craft and Joel Wright agreed upon and established the dividing line between their farms along the line now claimed by appellants.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.