# Carver et al. v. Turner.

March 4, 1949.

Rehearing denied May 3, 1949.

Geo. J. Ellis, Jr. and Marion Vance for appellants.

T. L. Hatchett for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Will Carver and Charlie H. Turner own adjoining tracts of land in Barren County. Carver obtained title to his tract from James C. Thomerson by deed dated December 15, 1941, and the adjoining tract was conveyed to Turner by Minnie Pauline Hagan and husband by deed dated October 17, 1942. On August 3, 1946, Turner instituted this action against Will Carver and his wife, Delia Carver, by filing a petition in equity asserting ownership to a disputed strip of land between his farm on the south and Carver's land on the north, and alleging that the defendants were committing a continuing trespass on the land. The petition alleges that the boundary line between the two tracts of land is by courses and distances "Beginning at a large beech near a sink, a new line, north 83-¾ (now north 84 E) east 155 poles to a poplar stump." The petition further alleges that the defendants are trespassing on plaintiff's land across the true boundary line between them. The land in controversy is described in the petition as follows:

"Beginning at a large beech near a sink, a new line, north 83-¾ (now North 84 E) east 155 poles to a poplar stump, thence south about fifty two (52) feet to a stone; thence a straight line west to the beginning."

The plaintiff asked that he be adjudged the owner of the land so described, and that the defendants be enjoined from trespassing thereon. In an amended petition it is alleged that it was the intention of his grantor to convey to plaintiff the land south of the lands of Will Carver and bounded on the north as follows: ''Beginning at a large beech near a sink, thence N 83-¾ E 152 (155) poles to a poplar (now gone).'' The defendants in their answer alleged that they were the owners and in possession of the land in dispute, and that the true and correct location of the boundary line was as follows:

''Beginning at a large beech at the South West corner of Will Carver's land, thence S 87½ E 16½ poles to a stake; thence N 83-¾ E 138-3/10 poles to a stone, passing on the South side of a marked beech at 28-¾ poles and passing between 2 marked beeches at 120 poles.''

They alleged that this was a conditional line agreed upon by plaintiff's and defendants' grantors in settlement of a bona fide controversy over the line; that the line was established by agreement of the parties by Lewis Rogers, county surveyor of Barren County, who made a survey in December, 1941, and established markers, monuments, stones and stakes on the line as surveyed; that the grantors accepted the line established by the surveyor, Rogers, as the true and correct boundary line, and held possession up to same during the time they owned their lands thereafter; and that plaintiff and defendants acquiesced in the line after they obtained title to their respective tracts. The defendants also pleaded estoppel, adverse possession and champerty. A large amount of proof was heard, and upon submission of the case the chancellor adjudged that the line contended for by plaintiff was the dividing line between the two tracts of land, and he quieted plaintiff's title to the land in controversy. The defendants appeal.

Appellant Will Carver acquired title to his tract of land by deed from James C. Thomerson, who had purchased it in 1933. Appellee, Charlie H. Turner, acquired title to the adjoining tract by deed from Mrs. Minnie Pauline Hagan, who had owned it about 18 years. Some time prior to 1939 a dispute arose between Thomerson and Mrs. Hagan as to the location of the boundary line between the two tracts. In Thomerson's deed the line

was described as running from a large beech near a sink N 83-¾ E 152 poles to a poplar. In Mrs. Hagan's deed the north line of her tract was described as running with the line of the adjoining tract, which was afterwards purchased by Thomerson. The line was known as the Stayton line, and Mrs. Hagan's deed called for the Stayton line. On September 11, 1939, Thomerson and Will Carver entered into a written contract for the sale of the 103-acre tract owned by Thomerson, and Thomerson was to execute and deliver a deed on or before January 1, 1940. The deed was not executed until December 15, 1941, because of the dispute between Thomerson and Mrs. Hagan as to the location of the division line. Several efforts were made to settle the dispute and a surveyor named Glass ran the line, but the result of his survey was unsatisfactory and the line established by him was not accepted by the parties as the correct line. Thomerson and Mrs. Hagan finally agreed to employ Lewis Rogers, the county surveyor, to run the line, and they agreed to accept his survey as the true location of the line in dispute. Rogers made the survey and established the division line as:

"Beginning at a large beech on a South West corner of Will Carver's land; thence S 87½ E 16½ poles to a stake; thence N 83-¾ E 138-3/10 poles to a stone passing on the South side of a marked beech at 28¾ poles and passing between 2 marked beeches at 120 poles."

Rogers erected markers along the line established by him by putting up stakes, marking trees and setting stones. Thomerson and Mrs. Hagan accepted this as the correct line, and thereafter on December 15, 1941, Thomerson executed a deed to Will Carver pursuant to the contract of September 11, 1939. In the deed the line was described not as established by Rogers, but as running from a large beech tree near a sink "N 83-¾ E 152 poles to a poplar (poplar gone, now stone)." The call "N 83-¾ E 152 poles to a poplar" is a copy of the call in the deed to Thomerson, and the stone referred to in the parenthetical clause is the stone set by Rogers. The ground upon which the chancellor rendered judgment for appellee does not appear, but one of appellee's chief contentions is that the line described in the deed from Thomerson to Carver is controlling. It is conceded by all parties that the large beech near a sink is now a corner,

but it is apparent that it was not always so. Formerly the corner was several feet south of the beech tree, but in the deed of a former owner of the Carver land the call to this point was changed so as to make the beech tree the corner. That call reads: "* * * thence a new line S 14½ W 98½ poles to a large beech near a sink." The succeeding call thence N 83-¾ S 152 poles to a poplar was not changed. The discrepancy thus resulting caused the dispute between Thomerson and Mrs. Hagan as to the correct location of the division line.

There can be no doubt that the controversy was in good faith. In order to establish the validity of a parol agreement fixing a boundary, it is necessary that there shall be doubt and uncertainty as to its true location. Holbrooks v. Wright, 187 Ky. 732, 220 S.W. 524; Amburgy v. Burt & Brabb Lumber Company, 121 Ky. 580, 89 S.W. 680. Here, the extent of Mrs. Hagan's holdings depended on the location of Thomerson's south line. After the change in the calls of a former owner's deed, the Thomerson survey failed to close and thus uncertainty as to the correct location of the line was created. Lewis Rogers, the surveyor, testified that in order to correct the error and close the survey it was necessary, beginning at the large beech tree near a sink, to follow a line "S 87½ E 16½ poles to a stake," and thence along the old course "N 83-¾ E 138-8/10 poles." It is evident that this last line is the same as the original line known as the Stayton line for which appellee's deed called. Rogers found marked trees along this line and evidences of an old rail fence. The proof shows satisfactorily that all of the parties acquiesced in the line established by Rogers until about the time this action was instituted. Appellant Will Carver erected a wire fence along 300 or 400 yards of the line about a year after it was established, and in 1944 appellee extended the fence a distance of 200 or 300 yards along the established line. While there is some conflict in the evidence as to whether or not the appellee, Turner, cultivated any land north of the line after he acquired title from the Hagans, the preponderance of the evidence is to the effect that appellants and appellee cultivated and used the land only up to the line established by Rogers. A careful examination of the entire record shows that a bona fide controversy as to the correct location of the

boundary line existed, and that the parties agreed on the dividing line and executed the agreement by marking the line. This line is controlling and not the line described in Thomerson's deed to Carver. The description of the land in the Carver deed is the same as the description in former deeds to the land, and creates the same uncertainty since the survey fails to close, but this uncertainty was resolved by the establishment of the agreed line. The agreement between Thomerson and Mrs. Hagan was an interpretation of the call in the deed to Thomerson, and the agreement having been executed the call repeated in the deed to Carver must be read in the light of that agreement. Thomerson intended by his deed to convey to Carver all of the land he had acquired by the 1933 deed. Mrs. Hagan could convey to appellee only the land owned by her which was bounded on the north by the line established by an executed agreement. Neither party could affect the title to the strip which had been in dispute by ignoring the agreed line in a future deed. Fields v. Sizemore, 105 S.W. 438, 32 Ky. Law Rep. 237; Warden v. Addington, 131 Ky. 296, 115 S.W. 241; High Gravity Oil Company v. Southwestern Petroleum Co., 6 Cir., 290 F. 370. In answering the argument that such an agreement by adjoining landowners is not binding upon their privies in estate, the court, in Warden v. Addington, supra, [131 Ky. 296, 115 S.W. 245] said:

"In the light of the authorities cited and quoted from, and upon principle, we think it is. A man can convey no greater estate in land than he has. Although he may have a deed embracing a particular boundary, if he has in the meantime parted with title to part of it, voluntarily or involuntarily, a subsequent purchaser from him gets only what he then owned. If he by parol has created an equity only, an innocent purchaser without notice may be protected as against such equity. But the quality of the transaction which we are here investigating, from the very necessity of its constituent elements, carries notice to all the world of the fact; for, unless it is executed, it is invalid. If executed, it is done in one of two ways: (1) By a marked line; or (2) by an actual adverse possession under it. Notice may be the existence of that which, if looked at or listened to, and then followed up by such inquiry as ordinary prudence would suggest,

would result in obtaining the knowledge sought to be charged. Actual adverse possession is always notice of its nature and of the fact. A marked line is notice. The reason it was marked was to notify the world that the person for whom it was marked claimed a title to that point. It is the oldest method of notifying the world of ownership of the claimant.''

See, also, Keen v. Osborne, 185 Ky. 647, 215 S.W. 798; Wisconsin Steel Co. v. Lewis, 178 Ky. 765, 199 S.W. 1068. Bush v. Chenault's Ex'r, 175 Ky. 598, 194 S.W. 777.

In view of the foregoing, it is unnecessary to consider the questions of estoppel, adverse possession and champerty.

Judgment is reversed with directions to enter a judgment in conformity herewith.