## Simmons' Admr., et al. v. Simmons.

### (Decided October 18, 1912.)

### Appeal from McCracken Circuit Court.

1. Deeds—Estoppel by Deed—Bar.—An estoppel by deed is a bar. which precludes a party under it, and his privies, from asserting as against the other, and his privies, any right or title in derogation of the deed, or from denying the truth of any material fact in it.

2. Deeds—Grantor Estopped to Deny Effect of.—A person who assumes to convey a title by deed is estopped, as against the grantee, to assert anything in derogation of the deed. He will not be heard, for the purpose of defeating the title of the grantee, to say, that at the time of the conveyance he had no title, or that none passed by the deed; nor, can he deny to the deed its full operation and effect as a conveyance.

3. Deeds—Conveyance by Husband to Wife in Contemplation of Separation—Consent by Husband That Wife May Make Will—Estoppel.—Where, in contemplation of a separation, a husband sold and conveyed his remainder interest in a farm to his wife for a valuable consideration, and as her separate estate, free from any claim he then had, or might thereafter have, and consented in writing to her making a will which devised all of her property to a third person, and the land was subsequently sold by the wife, the husband is estopped from claiming his distributable share of one-half of the personalty of his wife, the personalty being proceeds of the sale of the land.

BERRY & GRASSHAM and A. W. BARKLEY for appellants.

HENDRICK & CRICE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellee, S. R. Simmons, owned a life estate in a farm of 110 acres in McCracken County, and his wife, U. A. Simmons, now deceased, owned the remainder therein. Irreconcilable differences having arisen between them, they agreed on March 10, 1908, to live separately and apart thereafter. As a part of the agreement

of separation, S. R. Simmons sold and conveyed to his wife his life interest in the farm for $1,000 in cash, which she paid him. This deed was dated March 10, 1908, and recites that S. R. Simmons sold to his wife "all the right, title and interest which the party of the first part may now or hereafter have" in and to the land therein conveyed. Said deed contains this further provision:

"The purpose of this conveyance is to vest the title to said land absolutely in fee simple in the said U. A. Simmons, free from all right, title, interest and claim of the said S. R. Simmons, who hereby, and for the consideration herein expressed, waives and relinquishes all title and interest, including any prospective dower interest which he may hereafter have in and to said land, unto the said U. A. Simmons, giving to her the full right and power to make such distribution of said land at any time as she may see fit, either by deed or will, without the necessity of the said S. R. Simmons joining therein; and the said S. R. Simmons relinquishes to any purchaser or devisee of the said U. A. Simmons all right that he might otherwise have in the said tract of land. To have and to hold unto the said U. A. Simmons, her heirs and assigns forever, together with all warranties thereunto belonging, and with general warranty of title, unto the said U. A. Simmons."

On the same day, S. R. Simmons and U. A. Simmons, his wife, conveyed the land to Eugene Foster, in trust for the use and benefit of U. A. Simmons. This last mentioned deed recites that U. A. Simmons, the wife, owned a life estate in the farm above referred to; that S. R. Simmons then owned the "reversion" therein; that said U. A. Simmons had that day purchased S. R. Simmons' "reversionary" interest for $1,000; and that said S. R. Simmons and U. A. Simmons, "desiring to place the title to said property in such condition that it can be disposed of by will or deed by the said U. A. Simmons, without her husband, S. R. Simmons, joining in the conveyance thereof, the deed of trust was made to Eugene Foster, "for the purpose of accomplishing the object and purposes hereinabove set forth."

This deed contains this further covenant on the part of the grantors, S. R. Simmons and U. A. Simmons, immediately following the description of the land, to-wit:

"And by these presents doth confirm, convey and deliver unto the said Eugene Foster, trustee in trust for the use and benefit of U. A. Simmons, and for no other purpose. And upon the express condition that the said U. A. Simmons shall have complete and sole control, management and use of the property herein conveyed; and upon the further condition that the said U. A. Simmons, by and through the said Eugene Foster, trustee, shall have the power to sell, mortgage and devise, by will or deed, the property herein conveyed; and the said U. A. Simmons shall have the right to dispose of the property herein conveyed by will without the trustee joining in or approving the same; and upon the further express condition, that upon written request of the said U. A. Simmons, said Eugene Foster, trustee in trust for the use and benefit of said U. A. Simmons, shall have power to sell and convey, in fee simple, the property herein conveyed, or any part thereof, and a like power to mortgage the same, or any part thereof, without the said S. R. Simmons or U. A. Simmons joining in the deed. But should the said Eugene Foster, trustee as aforesaid, sell or mortgage said property, the written consent of the said U. A. Simmons shall be embodied in such conveyance.

"And the said S. R. Simmons and U. A. Simmons hereby convey, grant and deliver unto the said Eugene Foster, trustee in trust for the use and benefit of the said U. A. Simmons, and his successors in office, any and all interest that they or either of them, whether the same be for life or in remainder, have in and to the above described property, to have and to hold the same unto the said trustee and his successors in office, with covenant of general warranty."

On the same day Mrs. U. A. Simmons executed her will, to which her husband formally consented in writing. The will and the consent read as follows:

"I, U. A. Simmons, being of sound mind and disposing memory, do make and publish this, my last will and testament, with the full consent and approval of my husband, S. R. Simmons, which is evidenced by the fact that he has signed this will with me in acknowledgment thereof.

"It is my will that at my death, all the property, of every kind and description which I may own, both real and personal, shall go to and become immediately the

property, in fee simple, of Ida Foster, now the wife of Eugene Foster; and, if the said Ida Foster should die before my death, then all of my property shall go to the children of the said Ida Foster then living, or to the children of such as may be dead at the time of my death. And I request the McCracken County Court to appoint a personal representative for me to execute the terms of this will, if it be necessary. I desire that all my just debts owing at the time of my death be paid out of such property as I may leave.

"Witness my hand this 10th day of March, 1908.

"U. A. SIMMONS.

"Witness:

"I, S. R. Simmons, do hereby acknowledge my full approval of the foregoing will made by my wife, U. A. Simmons, and consent to the execution thereof.

"S. R. SIMMONS."

The farm was sold during Mrs. Simmons' lifetime, and she died in March, 1911, leaving, after the payment of her debts and funeral expenses, $3,336.85 in cash and notes, which represented the unexpended portion of the proceeds of the sale of the farm. Mrs. Simmons' will was duly probated in March, 1911; and, in that month S. R. Simmons renounced the provisions of her will, and claimed and asserted his marital rights under the Kentucky Statutes by a written instrument duly signed and acknowledged by him, and lodged with the county court clerk, as required by section 1404 of the Kentucky Statutes. On May 4, 1911, S. R. Simmons, the surviving husband, brought this suit against Q. L. Shelton, the administrator of Mrs. U. A. Simmons, deceased, and Ida Foster and Eugene C. Foster, her husband, and the creditors of U. A. Simmons, for a settlement of the estate, and for a division of the surplus personal property belonging to U. A. Simmons at the time of her death, of which S. R. Simmons claimed one-half as surviving husband. The answer of Ida Foster set up the foregoing facts shown by the deeds, the will of U. A. Simmons, and S. R. Simmons' written consent thereto, and alleged (1) that S. R. Simmons had thereby not only divested himself absolutely from all interest in his wife's real estate, but also to the proceeds derived from the sale thereof; that Mrs. U. A. Simmons, left no estate except this net balance of $3,336.85, which was wholly derived from the sale of the land; and (2) that by his execution of the deed to Foster,

trustee, his acceptance of the $1,000 for said conveyance, and his consenting to the will of his wife, S. R. Simmons estopped himself from now claiming any interest in the proceeds of the land.

The circuit judge sustained a demurrer to the answer as amended, and adjudged that S. R. Simmons, the plaintiff, was entitled to one-half of the surplus property left by his wife, U. A. Simmons. From that judgment Ida Foster and E. C. Foster prosecute this appeal.

It is agreed, by opposing counsel, that the rights of the parties in this case are to be determined under the Weissinger Act of 1894, regulating the property rights of married women. The husband's rights in his wife's property are fixed by section 2132 of the Kentucky Statutes—a part of the Weissinger Act—which reads as follows:

"After the death of either the husband or wife, the survivor shall have an estate for his or her life in one-third of all the real estate of which he or she, or any one for his or her use, was seized of an estate in fee simple during the coverture, unless the right to such dower or interest shall have been barred, forfeited or relinquished; and the survivor shall have an absolute estate in one-half of the surplus personalty left by such decedent."

The question, therefore, for decision is this: What was the legal effect of the deeds from S. R. Simmons to his wife, and to Foster, trustee, and his written consent to his wife's will? If those deeds estop him from now claiming his share as surviving husband in his wife's personalty which was the proceeds of the land he had theretofore conveyed to her, his petition should be dismissed. It will be noticed that the plea relied on is estoppel by deed, rather than the equitable estoppel *in pais*, which signifies estoppel by misrepresentation. An estoppel by deed is a bar, which precludes a party to a deed, and his privies, from asserting as against the other, and his privies, any right or title in derogation of the deed or from denying the truth of any material fact in it. A person who assumes to convey a title by deed is estopped as against the grantee, to assert anything in derogation of the deed. He will not be heard, for the purpose of defeating the title of the grantee, to say, that at the time of the conveyance he had no title, or that none passed by the deed; nor can he deny to the

deed its full operation and effect as a conveyance. 16 Cyc., 685; Central Coal & Iron Co. v. Walker, 24 Ky. L. R., 2191; 73 S. W., 778.

Applying the rule to the facts of this case, we are to inquire whether appellee's claim to one-half of his wife's surplus personalty derived from the sale of the farm, would defeat her title, under the deeds, or deny to them their full operation and effect as conveyances. Where a husband is left nothing by his wife's will, as in the the case at bar, it is not necessary for him to renounce the will of his wife in order to entitle him to inherit one-half of her surplus property. Smoot v. Heyser's Exor., 113 Ky., 81; Cunningham v. Cunningham's Exor., 140 Ky., 193. It is conceded by appellants that S. R. Simmons' renunciation was both voluntary and nugatory.

It is further conceded by appellants that a married woman, generally speaking, cannot under the Weissinger Act of 1894, regulating the property rights of husband and wife, execute a will disposing of her personal property so as to defeat the interest of her surviving husband therein. Appellants claim, however, that the facts of this case do not bring it within either of the two foregoing general propositions of law, because of the separation of the parties; and that their contemporaneous settlement of property rights, followed by the execution of the will by the wife, with the husband's written consent, made Mrs. Simmons' will effective for the purpose of defeating any right of her husband in her surplus personalty.

Appellants' contention is based upon the idea that the effect of the two deeds was to deprive S. R. Simmons of all his present and future rights in the land, and that the proceeds of the land are held in the same way. Unquestionably, the deed from Simmons to his wife conveyed all the right, title and interest which he then had, or might thereafter have in the land. By its terms it conveyed the land to his wife in fee simple, free from all rights and interests of her husband, who expressly relinquished any prospective "dower" (curtesy) interest which he might thereafter have in or to said land.

Furthermore, the deed from Simmons and wife to Foster, trustee, expressly provided the land should be held under the sole control of his wife, who might through her trustee, dispose of it by will or deed, without her husband joining therein. Unquestionably, a

husband may waive his right to any property belonging to his wife. Whether he has made the waiver is to be determined from the legal effect given his acts. In Welborn v. Ritter, 13 Ky. L. R., 122; 16 S. W., 360, we held that where a wife's separate estate in personalty was used in buying land, the deed therefor having been taken in the husband's name, the wife's money continued to be her separate estate for which she had a lien upon the land. In that case we used this language:

"The evidence shows conclusively that the land was paid for with Mary Ritter's money, a part of which was her portion of her father's estate, and the remainder was money she received for taking care of her invalid sister; that the husband agreed both sums should remain her estate, and he would receive the same and invest it for her benefit in the tract of land in controversy; that he did so invest said funds and desired the deed should be made to her, but by mistake the deed was made to himself.

"In the case of Bryant's Admr. v. Bryant, 3 Bush, 156, it is decided that the husband may waive his right to any personal estate that belonged to his wife, and permit her to retain the same as her separate estate, which arrangements courts of equity, as between the husband and wife and their heirs, will enforce. In the case of McConnell v. McConnell's Heirs, 4 Ky. L. R., 897, the husband agreed that the money from the estate of his wife's father should be treated as her separate estate, and he invested the same in land for her benefit, but by mistake the deed was made to him. It was held that in a contest between the wife and the heirs of the husband, he being dead, the wife was entitled to a reformation of the deed."

The purpose and effect of these conveyances was to vest the fee simple title to the land in Mrs. Simmons, free from any interest whatever, either present or future, of her husband; and, while the deeds do not specifically declare that her interest in the proceeds of the land should be the same as her interest in the land, it is clear that such a result was contemplated by the parties, and was, in law, accomplished by the deeds and will. Gardner v. Wills, 92 Ky., 386; Skeen v. Scoggins, 20 Ky. L. R., 333; Terrell v. Maupin, 26 Ky. L. R., 1203; 83 S. W., 591. S. R. Simmons evidently so understood it at the time, for he consented to this construction put upon the

deeds by his wife. Since his claim, therefore, to one-half of her personalty would, if sustained, defeat his own deed, he is estopped from now making the claim, and the circuit judge was in error in sustaining his demurrer to the answer.

Judgment reversed with instructions to overrule appellee's demurrer to the answer, and for further proceedings.