## Wisconsin Steel Company v. Lewis, et al.

(Decided January 22, 1918).

### Appeal from Harlan Circuit Court.

1. Boundaries—Agreement—Possession Thereunder.—An oral agreement fixing a boundary line followed by possession with reference to the boundary line so fixed is conclusive upon the parties and those holding under them, although the agreement was induced by an erroneous belief as to the true location of the boundary line, and although possession may not have continued for the full statutory period, it being sufficient to show that the boundary line was actually established and thereafter recognized and acquiesced in by the parties for a considerable length of time.

2. Boundaries — Agreement—Repudiation — Evidence.—Repudiation of an agreed boundary line is not shown by evidence that the parties to the agreement in subsequent conveyances of property on such line did not refer to the agreed line as such, but as the "north line of the John Lewis 2800-acre patent," as during that time said "north line" and the "agreed line" were recognized by the parties and neighborhood generally as being identical.

SAMPSON & SAMPSON for appellant.

W. F. HALL for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Tracing its title to a large body of wild and un-inclosed mountain land in Harlan county, through John Lewis, to whom a patent for 2,800 acres of land was issued in 1845 by the Commonwealth, the appellant filed this action in ejectment against the appellees. In addition to a denial of appellant's title to the land in controversy, appellees pleaded that, in 1874, the remote vendors of appellant and one Henry B. Creech, through whom appellees claimed the land, in order to settle a dispute as to the true location of the division line between their lands, had the line surveyed and marked; and that, until just before the filing of this suit, the parties owning the land on either side of this line acquiesced in same as then located and marked, which was denied by appellant. This issue, which is the only one here, was submitted to the jury, who found for appellees; judgment was rendered accordingly; and from that judgment this appeal is prosecuted and a reversal sought upon the ground that the court erred in overruling appellant's motion for a peremptory instruction.

Other lands, in reference to which judgment was rendered in favor of appellant, were also involved in the trial, but upon this appeal only the lands lying north of the line claimed to have been established in 1874 referred to above and between the Tan Trough branch on the west and the top of the ridge between the Lick branch and the Abner Lewis branch on the east are involved. It is shown pretty conclusively here that, if the north and last line of the John Lewis 2,800-acre survey is properly located, appellant's title papers covered the land in controversy, and it was entitled to recover same unless defeated by the agreed location of that line in 1874 by the then owners of the land upon either side thereof, and their acquiescence in that location and establishment of the line during their subsequent ownership of the land. It is, however, especially important at this point to call attention to the fact that, according to appellant's contention, the last or north line of the John Lewis survey does not form the northern boundary line of its lands, which is rather the south line of the older Abraham Sergent patent issued in 1834. This fact is, in our judgment, especially significant, if not controlling, in this controversy, although learned counsel for neither party seem to have considered this fact, to which we will later refer more at length.

The location of the east end of the last line in the John Lewis 2,800-acre survey, being two white oaks, and the beginning corner of that survey, was well known in 1874, as it is now, and about which there is no controversy, but the other end of that line was not known, as no attempt was ever made to locate it until in 1874, when a controversy over its true location arose between Jonathan Cornett and W. R. Lewis, who then owned land upon either side thereof near its western end. None of the parties, who then owned lands binding on this line, knew even approximately its true location, as it had never been surveyed, so, to settle the dispute between Cornett and W. R. Lewis, and to fix its location between the other interested parties, it was agreed by them that Hiram P. Dixon, the county surveyor, should run it out and establish it. Pursuant to this agreement, Hiram P. Dixon went upon the land in 1874, for the purpose of surveying and locating the line in controversy, accompanied by Abner Lewis and Ebeneezer Dixon, remote vendors of appellant, Henry B. Creech, remote vendor of appellees, and W. R. Lewis and Jonathan Cornett. These

persons owned all the land upon either side of the last line in the John Lewis 2,800-acre survey between the western end thereof and the top of the ridge between the Lick and Abner Lewis branches; provided, however, the true location of this line was south of the lands embraced within the older Abaham Sergent 200-acre patent, issued in 1834. But, if the true location of the last line of the John Lewis survey overlapped the Abraham Sergent survey, as now seems to be the case, the south boundary lines of the Sergent patent, and not the north line of the John Lewis patent, formed the northern boundary line of appellant's land, then owned by Abner Lewis and Ebeneezer Dixon; and they were not interested in the location of the north line of the John Lewis survey. The fact that they participated and agreed to the survey made by Hiram P. Dixon in 1874, as they undoubtedly did, is positive proof that they, regardless of that survey, believed and agreed that the north line of the John Lewis survey was south of the Abraham Sergent patent, which explains, in a large measure, their agreement to and acquiescence in the location of that line as then made.

The last four corners called for in the John Lewis patent are stakes. So, to locate the line in controversy Dixon began his survey at the last known corner, the 29th, witnessed by a spruce pine and a white oak, about the location of which there was no controversy, and surveyed the intervening lines according to courses and distances called for in the patent, and the point thus located he accepted as the 33rd, or last corner, of the survey and the west end of the line to be located, and at which point he marked a beech tree with his initials, "H. P. D." Dixon then proceeded to locate and mark the line in controversy as far as the top of the ridge between the Lick branch and the Abner Lewis branch, where he marked a white oak tree; and this was as far east as the parties present were interested in marking the line. But, to prove the correctness of his work, Dixon continued to survey the line its whole length, missing the beginning corner some fifteen feet, as testified by him, but about one hundred feet, according to the testimony of W. R. Lewis, these two being the only persons then present who testified upon this trial, all of the others being dead. That the lines as thus run by Hiram Dixon, except the last or disputed one, were correctly surveyed is proven by subsequent surveys made by skillful survey-

ors employed by both parties to this action; but by these recent surveys it is equally well shown that he could not have run the line in controversy upon the call in the patent (North 80 East), as he says he did, and located it where he says he did and where some marked trees, which he says he then marked, were found; but he testified that he did so survey and mark it, and in this he is corroborated by the testimony of W. R. Lewis and to some extent at least by the marked trees found along the line.

In making this survey, Henry B. Creech, appellees' remote vendor, who was claiming the land north of the line they were seeking to establish, and Ebeneezer Dixon, one of the appellant's remote vendors, who was claiming a part of the land south of that line, acted as chairman; and, according to the testimony of both Hiram Dixon and W. R. Lewis, the only survivors then present, both Creech and Ebeneezer Dixon, as well as Abner Lewis, appellant's other remote vendor, who then claimed the rest of the land south of that line, witnessed and assisted in marking the line and agreed upon it as thus located and marked, as their division line, or the true line of the John Lewis 2,800-acre survey, which they were attempting to locate. Even if this line, as then located, were not the true location of that line, as is now contended by appellant, and as seems to be true, if this location was agreed upon by all the parties as their division line and thereafter recognized and acquiesced in by them during their ownership of the lands binding thereon, a period of about fourteen years, and that agreement was never repudiated by them nor any of their vendees until shortly before the filing of this action, a period of nearly thirty years, as there is much proof in this record to show was done, the appellant was not entitled to a peremptory instruction, even though, as argued by counsel for appellant, the agreement to and acquiescence in that location for so long a time was induced by an erroneous belief that the surveyor, Dixon, in whom all parties had implicit confidence, had correctly located the line. If such were the law, no agreement, however honestly made and however long acquiesced in, could ever settle a dispute as to the true location of a boundary line, if at any time thereafter it should develop that the line was not properly located; yet, the whole argument advanced here for appellant, except as to the weight of the evidence, which was clearly for the jury, and need not be

noticed further, is that, because the parties believing the line, as located, was the true line when it was not, and therefore agreed to and recognized it as the division line between the lands which they otherwise would not have done, they are not bound by their action induced by such belief. In the case of Frazier v. Mineral Development Co., 27 Ky. L. R. 815, the syllabus, which is sustained by the opinion, is as follows:

"Where parties own adjoining tracts of land and without knowing the exact location of the dividing line between them verbally agree upon and fix a certain drain as such dividing line, and thereafter for many years continue to reside on and claim their respective lands up to such agreed line, such agreement is enforceable in equity, although the period of fifteen years has not elapsed since such agreed line was established."

The rule thus announced was approved and followed in the very recent case of Garvin v. Threlkeld, 173 Ky. 262, in which the authorities upon the question, not only in this state, but elsewhere as well, are extensively reviewed, and we need not therefore again discuss the question or cite other authorities in support of the rule, or point out wherein the cases cited by counsel for appellant are inapplicable, further than to call attention to the fact that none of those cases deals with facts similar or even analagous to those presented here.

The only testimony in the record which appellant contends even has a tendency to show repudiation of the agreed division line by any of the parties is the fact that in subsequent conveyances, the parties did not refer to the agreed line as such, but rather as the north line of the John Lewis 2,800-acre patent. In view of the fact, to which we have called attention, that if the John Lewis north line was located anywhere near where appellant contends is its proper location, that line was not the boundary line of the land in controversy, which instead would have been the southern boundary lines of the Abraham Sergent patent, it seems to us the very fact that subsequent conveyances called for the John Lewis line conclusively proves that all parties regarded the north line of the John Lewis patent as located south of the Sergent patent, and the boundary line; and as that line was then, and until quite recently, generally recognized in the neighborhood to be the line located and marked by Hiram Dixon in 1874, this evidence sustains rather than refutes appellees' contention.

For the reasons indicated, the judgment is affirmed.