## Williams et al. v. Waddle et al.

Feb. 14, 1941.

Kennedy & Kennedy for appellants.

B. J. Bethurum and Charles J. Walker for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This appeal is from a judgment entered on a verdict for appellees, M. F. Waddle and his wife, plaintiffs below, in an action of ejectment. The issue, as developed by the pleadings and the evidence, resolved itself into a question of ownership of a lane 105 poles long between the land of appellants and appellees who are adjoining landowners. Appellants' land is on the west side of the lane and appellees' land is on the east side.

The appellants inherited their land from their father, Humphrey Williams, to whom the land was conveyed in the year 1901. The eastern boundary of the Williams deed is a call running from a rock and dogwood North 32½ East to a rock, small hickory and black oak bush. The lane in controversy, which was for many years fenced on both sides, runs with this call. The western boundary of appellees' deed executed in 1904 calls for the Williams line. Thus the main issue in the case was whether the Williams line was the eastern fence of the lane or the western fence. In short, if the Williams line, North 32½ East 105 poles, when properly located, included the lane, then the appellants had record title to the land, otherwise the record title was in appellees.

It may be added that each side attempted to establish title by adverse possession. This evidence largely consisted of testimony that the respective parties were in possession of the lane without stating facts sufficient to show possession—the testimony of the witnesses amounted to mere conclusions of law. It is true that appellees produced some evidence of actual adverse possession but such possession, which consisted of cultivation of part of the lane when a portion of the fence on the east side fell down, only went back to the year 1931 and thus was insufficient to make an issue on this point. The evidence of both parties as to adverse possession was insufficient to justify a submission on this question.

The court submitted the controversy to the jury on the following instruction:

"The jury is instructed that if they shall believe from the evidence that the correct line between the lands of the plaintiff and the defendants begins at a rock and dogwood and runs N. 32½ E. 105 poles

to a rock, small hickory and black oak, this being the Williams line and the line called for in the plaintiffs' deed, which calls binding on the Williams line; and the jury is further instructed that if you believe from the evidence that when the said Williams line is correctly located, the land in controversy is included within the tract claimed by the plaintiffs, then you will return a verdict for the plaintiffs; but unless you shall so believe, you will return a verdict for the defendants.''

In view of this instruction, it is apparent that the jury found that the correct location of the Williams line, North 32½ East 105 poles, excluded the lane from the Williams tract and placed it within the appellees' boundary. This being true, the judgment can be sustained *only* on the theory that this finding was justified by the evidence.

It is contended by appellants, first, that as the appellees failed to prove a record title to their land going back to the Commonwealth or to a common source a verdict should have been directed for ·them and, second, that even though this be not true, the evidence established conclusively that the proper location of the Williams line was on the east side of the lane so as to include the lane within their deeded boundary.

It must be conceded that in an ordinary action of this character appellants' first contention would be well founded since it is so well settled as to require no citation of authority that in such an action the plaintiff must prevail on the strength of his own title and not on the weakness of his adversary's title and that in order for a plaintiff to recover on a paper or record title such title must be proven back to the Commonwealth or to a source of title common to both the plaintiff and defendant. Here, the appellees made no attempt to carry their title back to the Commonwealth or to the same source as appellants' title—they merely introduced their deed. But this case was unique in that, while the plaintiff's title to the land described in the petition was denied by the first paragraph of the answer and counterclaim, nevertheless in the second paragraph the defendants alleged that the only land in controversy was a lane about 15 feet wide and 105 rods long and in effect admitted that the plaintiffs were the owners of the adjoin-

ing land up to the defendants' line. Thus the answer and counterclaim, in effect, admitted that either the plaintiffs or the defendants were the owners of the lane and claimed that the defendants were the owners both by paper title and by adverse possession. In view of the peculiar state of the pleadings we think it would have been useless and frivolous to have required the plaintiffs to prove record title back to the Commonwealth or to a common source with the defendants. The only issue, as far as record title was concerned, was the correct location of the Williams, or division, line.

We think the second contention made by appellants is well founded. The evidence for the appellees as to the true location of the Williams line, with which their deed called, consisted of the testimony of a surveyor who located the line by running some of the calls of *appellees'* deed and the testimony of some witnesses who testified that after Henry Waddle, appellees' grantor, conveyed appellees' land to them he made declarations that the western fence of the lane was the correct boundary between the two farms. Since the appellees' deed called with the Williams line, the proper location of appellees' line depended entirely on the true location of the Williams line and this line could be located by a surveyor only by running the calls of the *Williams* deed or by finding the monuments of the disputed call, that is, the rock and dogwood at the south end of the call or the rock, small hickory and black oak bush at the north end of the call. The testimony of this surveyor was wholly insufficient to show that he found the true monuments of the call. Further, the evidence for appellees as to the statements made by Henry Waddle, appellees' grantor, concerning the true location of the line after he conveyed the land to appellees was incompetent. While it is generally held that the declaration of a deceased person made by him while he was the owner and in possession of land and while in the act of pointing out his boundaries and their marks are competent to establish, not only the extent of his possession, but that the boundaries and marks are as stated, nevertheless such declarations are not competent where the declarant had ceased to own or occupy the land at the time of the declaration. 22 C. J. 275; Preston v. Vanhoose, Ky., 116 S. W. 279. We cannot escape the conclusion that appellees' testimony, when measured in the light of the rules

enunciated, was not sufficient to warrant the submission of the cause to the jury and that a verdict should have been directed in behalf of appellants.

Another just complaint made by appellants is that the appellee, M. F. Waddle, was permitted to testify as to statements made to him by his deceased father, Henry Waddle, appellees' grantor, as to the true location of the line. Even if the declarations of appellees' deceased grantor, Henry Waddle, had been competent under the general rule when testified to by a disinterested party, nevertheless this appellee's testimony as to such statements made by a deceased person was in plain violation of Subsection 2 of Section 606 of the Civil Code of Practice prohibiting one from testifying for himself concerning any verbal statement of one who is dead when the testimony is offered.

Appellants complain also that the instruction given was erroneous as to the first issue submitted by it in that the jury were permitted to speculate as to what was the correct record boundary of the Williams land. Their position is that the court should have instructed the jury specifically that the correct line between the plaintiff and defendants begins at a rock and dogwood and runs North 32½ East 105 poles to a rock, small hickory and black oak bush. There is merit in this complaint. Since no issue was submitted authorizing the jury to find the line to be at any other place than as called for in the Williams deed, the jury should have been told what the line was as called for in that deed and not left to speculate as to what that line might be.

To sustain the judgment, counsel for appellees most earnestly insist that the evidence was sufficient to establish title in appellees by adverse possession. As above pointed out, however, the evidence was wholly insufficient for this purpose. Even though the evidence had been sufficient to make an issue on this point, still the judgment could not be sustained on this ground since no instruction on this issue was offered or given.

In a further effort to justify the judgment counsel for appellees rely on the evidence of a brother of appellee, M. F. Waddle, who testified in substance that many years ago a dispute arose between Cy Colyer, who, the witness said, was appellants' predecessor in title, and

Henry Waddle, appellees' predecessor in title, and that this dispute was settled by building the western fence of the lane as the agreed line between the farms. Had it been established by record evidence that Cy Colyer was a predecessor in title of appellants', this evidence would have been sufficient to warrant an instruction on this issue since it is settled under our law that where the location of a division line is uncertain and there is a bona fide dispute as to its location and the parties agree on the line and execute the agreement by marking the line or building a fence thereon, such agreement is binding on the parties. Garvin v. Threlkeld, et al., 173 Ky. 262, 190 S. W. 1092; Crutcher v. Hill, 173 Ky. 758, 191 S. W. 455. However, as there was no instruction on this issue the judgment may not be sustained on this ground.

The judgment is reversed with directions to grant the appellants a new trial and for further proceedings consistent with this opinion.