## Fordson Coal Co. v. Howard et al.

Feb. 5, 1943.

M. C. Begley for appellant.

J. H. Asher and Wm. Lewis & Son for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In the beginning the suit was to try title to nine contiguous tracts forming a large boundary of land, but it was resolved into a contest of title to 148.3 acres, the determination of which depended primarily upon the answer to the question: Where did Gib Collins have his wolf pit or trap in Leslie County some 75 years ago? A

stake, 10 poles below it, was an important corner. The plaintiff, Fordson Coal Company, has contended it was at the mouth of Bracken Fork, also known as Wolf Pen Branch, on the northeast bank of Big Laurel Fork of Johnson's Rockhouse creek. The defendants, the heirs of Israel and Sarah Howard, have contended it was on the northwest bank of Big Laurel, about one-half mile below that point. The court found it to be at the latter place and gave judgment for the defendants. On the appeal the plaintiff insists that was error; but if this court should concur in the location, then we should hold the defendants be estopped to deny its contentions.

On January 29, 1889, the defendants' ancestors, Israel and Sarah Howard, conveyed 2,485 acres to G. F. Stearns, trustee, for $2 an acre. The plaintiff now has that title. The defendants' claim is that the 148.3 acres involved was not covered by that deed because the lines did not reach the old and true corner: One of the lines in the deed is:

"Thence S 63 degrees W 68 poles to a stake 10 poles below a wolf pit built by Gib Collins on the North West bank of Laurel Fork of Johnson's Rock House (from which bears a rock N 49 degrees E 28 links and a white oak bears N 48 degrees W 14 poles.)"

The Howards had acquired title to two patents of 200 acres each issued in 1870 to Jesse Mattingly, Nos. 43466 and 43467. These two surveys call for a common corner on the north as "a stake 10 poles below wolf pit built by Gib Collins on the northwest bank of Laurel Fork."

The plaintiff also has title to the land north of this property, emanating from a deed from William Sizemore and Thomas Gibson to E. H. Patterson, trustee, executed in 1890. The deeds are not in the record, but it was stipulated that plaintiff had a connected chain of title to patents granted in 1870 to Sizemore and Gibson, one of which was No. 44843. One of the southern lines of that patent is described as running with the line of the Jesse Mattingly 200 acre survey "to a stake 10 poles below Gibbs' wolf pit, a corner to said 200 acres, same course continued," etc. It appears that the subsequent deeds called for the northern line of the conveyance from the Howards to Stearns, trustee, and that stake, which of course had long since disappeared.

140

We confess our inability to understand how there could be a tract of 148 acres between these two conveyances, the one from the Howards and the other from Sizemore and Gibson, as each calls for the same line, reaching the same spot, wherever it was, and plaintiff's chain of title is stipulated to be connected to both patents. But it seems to be agreed that the tract is there as an omission from the deed from the Howards to Stearns if the defendants are correct as to the location of the wolf pit corner. Our study of this large record leads to the conclusion that the evidence of the plaintiff as to the location of the wolf pit is at least more persuasive than that of the defendants. But it does not seem necessary that we reconcile or choose between the conflicting testimony of the surveyors and of neighborhood tradition. We think the evidence is conclusive that the location contended for by the plaintiff was agreed to by Israel and Sarah Howard and that the defendants are estopped now to deny it.

When the Howards sold the body of land to Stearns, trustee, a survey was made by Dan and Allen Lewis and the description in the deed was according to that survey. The same man surveyed the property to the north when a deed to it was executed by the patentees or their successors to Patterson, trustee, and, as above stated, that deed referred to the line of the Howard-Stearns conveyance as its southern boundary and the wolf pit as there located as a monument. Both instruments put the site of the wolf pit where the plaintiffs here contend it was. According to the defendant, Z. R. Howard, a son of the grantors, now 74 years old, his father at the time the deed was executed had insisted with the surveyors that the pit was where the defendants contend it was. He says his father himself had surveyed the land, but his qualification to do so is not mentioned. He had wrangled over the difference in location for a few days, insisting the line should go farther down the creek so it would take in this land, for which he should be paid. But he yielded and signed the deed. However, the witness says his father afterward claimed the land between the two points. The witness makes the inconsistent statement, "He always said that they swindled him out of 145 acres." This indicates that instead of taking too little, Stearns had taken too much and did not pay for it. Another son testified to the argument between his father and

the surveyors as to the location of the pit, but the surveyors had maintained their point and the deed was executed accordingly, although he, too, says his father continued thereafter to claim that he owned some land which had been omitted from the deed. Another son testified that his father cursed around and ''said the trade was null and void unless they took it all. But he finally worried around and decided he would make the deed to the number of acres that he had in the boundary and he would keep the rest''; also, ''he didn't guess he would let them have the land as they were undertaking not to pay him for all of it but finally they did trade.'' The witness also testified that Stearns ''was buying what land my father owned regardless of what surveys they were; he was buying all he owned.''

Considering all the circumstances, we do not doubt that the Howards intended to convey all the land they owned on this creek. At that time Gib Collins was alive and residing not far away and it may be reasonably assumed that he was asked about the site of his old wolf trap and his answer settled the matter. What Israel and Sarah Howard did contradicts the testimony as to what he claimed and supports the conclusion that, though protesting, he ultimately yielded and agreed that the point fixed by the surveyors was correct. They promptly surrendered possession of all their land and moved with their family to Clay County. After Sarah died Israel moved to Missouri in 1912, and died there in 1935, without ever having returned to Leslie County after selling out. Although several witnesses testified that he had said he owned the land involved, Israel never afterward paid any taxes on it or exercised any dominion over it or otherwise manifested his ownership of this parcel or any other land in Leslie County. If this 148.3 acres is not in fact embraced in the deed from the Howards to Stearns, it was embraced in the deed from Sizemore and Gibson to Patterson. Of course, we would not be understood as indicating that even though covered in the latter deed it was a legal conveyance if in fact the land did not belong to Sizemore and Gibson. The point is that the grantee, Stearns, as well as the parties who conveyed and received title to the adjoining Sizemore and Gibson land, relied upon the line established by the Howard-Stearns transaction which was had within the previous year.

A grantor and those in privity with him are precluded from asserting as against the grantee and his successors anything in derogation of the deed or from denying the truth of any material fact in it. Simmons' Adm'r v. Simmons, 150 Ky. 85, 150 S. W. 59; Cornelius v. Kinnard, 157 Ky. 50, 162 S. W. 524; Wabash Drilling Company v. Ellis, 230 Ky. 769, 20 S. W. (2d) 1002; Fordson Coal Company v. Potter's Executors, 237 Ky. 311, 35 S. W. (2d) 298. The concession and acceptance by the Howards of the location of the old boundary corner, the wolf pit, as established by the surveyors, and their recognition by their deed of that as being the proper site, estop the defendants from now asserting it to be at a different location, to the detriment of the plaintiff, who, with its predecessors in title, acted and relied in good faith upon the description and location. The situation is not unlike a verbal agreement establishing a boundary when its correct location is in dispute, the parties being bound by the agreement and each estopped to deny that location. Wisconsin Steel Company v. Lewis, 178 Ky. 765, 199 S. W. 1068; Williams v. Waddle, 285 Ky. 416, 148 S. W. (2d) 298.

We are of the opinion that the defendants are bound by the location of the old monument, the wolf pit, fixed in the deed, and it is conceded that as there located the lines of the deed embraced all the land their ancestors owned at this place; hence, that the judgment should have gone in favor of the plaintiff.

Judgment reversed.