## Webb v. Niceley et al.

Jan. 18, 1946.

Fritz Krueger and E. R. Denney for appellant.

B. J. Bethurum for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

This action in ejectment was originally brought by W. G. Niceley and H. F. Niceley, appellees herein, against R. G. Webb and Sam Spivey. The court below adjudged the appellees to be the owners of the mineral rights in the property in controversy. Sometime thereafter the appellees filed a voluntary petition in bankruptcy. Due to certain disclosures brought out by the evidence of the appellees in the bankruptcy proceeding, the appellants brought an action in the Rockcastle Circuit Court pursuant to Subsection 4 of Section 518. of the Civil Code of Practice, seeking to set aside the original judgment and the granting of a new trial. Judgment of the lower court dismissing that petition was appealed from and reversed by this court. Webb et al. v. Niceley et al., 286 Ky. 632, 151 S. W. 2d 768. The cause, therefore, went back to the Rockcastle Circuit Court, and after hearing additional testimony, it was retried and the court again adjudged the appellees entitled to the relief originally sought, from which the appellant, R. G. Webb, prosecutes this appeal.

Pursuant to the opinion above, Minnie Moore, W. L. Niceley, and the Trustee in Bankruptcy were made parties to the action. Thereafter, the Trustee in Bankruptcy, by disclaimer, was removed from the case. William Lewis Niceley was removed. Sam Spivey died in the interim, and Minnie Moore on her own motion withdrew, leaving as contestants the appellant, R. G. Webb, and the appellees, W. G. and H. F. Niceley.

The contesting parties herein are in agreement that the plaintiffs below, in an action of this sort, must recover on the strength of their own title and not upon the weakness of the defendants' title. See Wilburn v. North Jellico Coal Co., 272 Ky. 749, 115 S. W. 2d 288; Williams v. Waddle, 285 Ky. 416, 148 S. W. 2d 298.

The appellant contends, first, that the appellees never did have title to the minerals in controversy, and further, that if they ever did own the property they had disposed of it before the filing of this action.

W. G. and H. F. Niceley are father and son. H. F. Niceley claims an undivided one-half interest in the property in question from his father, W. G. Niceley, who claims title through the following sources: First, from D. G. Clark, Sheriff of Rockcastle County by tax deed dated January 18, 1923; Clark from the New Livingston Coal Company; the New Livingston Coal Company from Johnston; Johnston from Ward; Ward from Zodock Spivey.

It cannot be successfully disputed but that Zodock Spivey and wife did, on the 25th day of March, 1902, convey to William Ward the mineral rights to their property. Likewise, it is true that through a master commissioner's deed the coal and mineral rights to the Zodock Spivey tract of 125 acres were conveyed to W. Mc. C. Johnston, and that Johnston and wife, by deed dated November 9, 1903, conveyed the mineral rights in the Zodock Spivey tract to the New Livingston Coal Company. However, here is the point where we meet the first difficulty in tracing the source of title. It is obvious that the deed from the Johnstons to the New Livingston Coal Company contains a description of land owned by Johnston which is conveyed in fee simple to the New Livingston Coal Company, and, secondly, a description of land in which only the mineral rights are conveyed, and by the deed it appears the New Livingston Coal Company became the owner of the surface rights and mineral rights in certain property and the owner of mineral rights in other properties, the Zodock Spivey tract being of the latter.

We are next confronted with the determination of the exact property, if possible, the elder Niceley re-

ceived by virtue of this tax deed. There is claim herein that the acreage of all, both mineral and surface rights owned by the New Livingston Coal Company, was about 1600 acres. This record does not show facts conclusive of that but it does justify the conclusion that the New Livingston Coal Company did own in fee both surface and mineral title to some land and only the mineral rights in other.

It will be noted that the Sheriff's deed apparently undertakes to convey a fee simple title to real estate without any mention of mineral or surface rights, which leads to the immediate conclusion that it is a deed to the real estate inclusive of all rights. The natural conclusion is that if the New Livingston Coal Company did have a plat of the entire body of land in which it had mineral rights as well as a fee simple title to certain real estate, it did have a plat of that portion of the boundary in which it owned a fee simple title to both the surface and mineral rights.

It is obvious that the sale under the Sheriff's deed was not a sale of mineral rights alone but a sale of the real estate without any reference to mineral rights. The descriptive part of the Sheriff's deed is as follows:

"1st. Boundary known as Lots No. 1, 2, 3, 4, and 5, and thus bounded, on the north by the lands formerly owned by Ed Smith and Steve Fields; on the East by the lands of Steve Fields and George Johnson on the South by Rockcastle River; on the west by the lands formerly owned by Zodock Spivey and Rockcastle River.

"2nd. Boundary: Lot No. 6, bounded as follows: On the North by the L & N R. R. Co., on the East by the land formerly owned by the Livingston Lumber Co., on the South by Jeff Wise and W. H. Graves and on the lands of Jeff Wise, William Shelton and L & N R. R. Co., and containing in both boundaries 160 acres more or less."

In substantiation of this view it might be noted that in 1932, which was before the conveyance to H. F. Niceley, W. G. Niceley and his wife executed a general warranty deed to their daughter, Minnie Moore, in which they conveyed the identically described land and gave as the source of title the D. G. Clark, or Sheriff's deed. The descriptive part of the Minnie Moore deed is as follows:

"1st. Boundary known as Lots Nos. 1, 2, 3, 4, and 5 thus bounded: On the north by the lands formerly owned by Ed Smith and Steve Fields; on the East by the lands of Steve Fields and Geo. Duncan; On the South by Rockcastle River; on the West by the lands formerly owned by Zodock Spivey and Rockcastle River and containing about 140 acres more or less

"2nd. Boundary: Lot No. 6 bounded as follows: On the North by the L & N R. R. Company, on the East by the lands formerly owned by the Livingston Lumber Company and on the South by Jeff Wise and W. H. Graves and on the North by the lands of Jeff Wise and William Shelton and L & N R. R. Company and containing about 20 acres more or less."

It will be noted that the only difference in the two deeds is that in the Sheriff's deed it is stated, "and containing in both boundaries 160 acres more or less," whereas, in the Moore deed the first tract contains 140 acres more or less and the second tract 20 acres more or less.

This conclusion is further supported by the testimony of H. F. Niceley, the son, who stated that he had a conversation on Wednesday following the sale with a Mr. McRoberts, agent of the New Livingston Coal Company, in which McRoberts told him that his company did not want to put any more money on the property and said, "You have got some land down there."

The striking fact as evidenced by this record is the failure of the appellees, whether intentional or unintentional, to show that the land as described in the Sheriff's deed included the Zodock Spivey tract. Considerable effort was made to show that the Moore tract did not include the Zodock Spivey tract.

On August 10, 1939, Surveyor William M. Durham gave his deposition in the consolidated cases of Minnie Moore v. W. G. Niceley et al., and William Niceley, Jr., v. Minnie Moore et al., in which appears the following testimony:

"Q. Mr. Durham I will hand you this paper marked exhibit 'A' which has been a part of the record in these two cases and ask you to identify this exhibit? A. It is a Platt and certificate that I made for W. G. Niceley

in Rockcastle County on the waters of Rockcastle River, made April 10, 1923.

"Q. Does this land of which you made this platt lie in Rockcastle County? A. Yes.

"Q. Mr. Durham, are you acquainted with what is known as the Zodoc Spivey tract or parcel of land located on the waters of Rockcastle River in Rockcastle County, Kentucky? A. I am.

"Q. Mr. Durham, where does the Zodoc Spivey tract of land lie with reference to the land which this platt you made represent? A. It joins the land I surveyed.

"Q. I will ask you Mr. Durham, if the land represented on this platt by lots number 1, 2, 3, 4, and 5, is part of the Zodoc Spivey tract of land? A. It is not. * * *

"Q. By whose papers or deed did you make this survey and platt? A. From Sheriff's deed of D. G. Clark to Niceley.

He was called again on August 4, 1941, in the taking of additional testimony after new trial was granted, in which he testified as follows:

"Q. Do you know now where the land is located that is covered by Minnie Moore's deed? A. No.

"Q. Do you know where Lots 1, 2, 3, 4, 5 and perhaps 6 that you surveyed in 1923. A. That I surveyed for Mr. Niceley—yes, I know that land.

"Q. Did you make a map of that? A. I did. * * *

"Q. Do you know whether these are the lots that you pointed out on this map that are contained in Minnie Moore's deed? A. I do not remember about Minnie Moore's deed.

"Q. Do you know where the Zodock Spivey 125 acres of land lie? A. Yes sir.

"Q. Have you ever run that or seen it run out, the Zodock Spivey? A. I made a survey around it for Mr. Niceley.

"Q. Tell whether or not the boundary of that Zodock Spivey tract that you say you ran out includes either of the lots that adjoin on this map that you have

heretofore made a part of your deposition? A. It does not.

"Q. Does it include any part of this land laid off here in lots? A. No, the Spivey land I surveyed does not include any that is mapped there. * * *

"Q. Whose deed did you use when you ran out the Zodock Spivey tract? A. The best of my knowledge we went to Mt. Vernon and got a copy of the deed—the Zodock Spivey deed.

"Q. Did you correctly run that boundary out? A. Yes.

"Q. Does any part of the boundary of the Zodock Spivey tract come near to these lots of Minnie Moore? A. They join them."

We have the anomaly of a surveyor testifying in one place that he had made his map and plat from the Sheriff's tract and it did not include the Zodock Spivey tract, and testifying again that the Moore tract did not include the Zodock Spivey tract but merely joined it, and also testifying that he did survey the Zodock Spivey tract but that he went to the courthouse and got a description from the Zodock Spivey deed. By some quirk of the imagination the appellees seem to be attempting to impress their claim and right to the Zodock Spivey property by the fact that the surveyor made a survey of it by using the Zodock Spivey deed. It is inescapable that the Sheriff did not sell, according to the deed, the mineral rights in lands outside the description contained in the tax sale, and the only land sold was that which was advertised as joining the Zodock Spivey land, and which, as the surveyor testified, did not include the Zodock Spivey tract, but joined it. The mere showing that the Moore tract is not the tract in controversy can in no way explain why a tract of land bounded with the identical boundaries and containing the same acreage could include the Zodock Spivey tract.

Wherefore, the judgment is reversed.