

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

June 26, 1989

Ms. C. Kingsbery Ottmers
Public Counsel
Public Utility Counsel
8140 Mopac
  Westpark III, Suite 120
Austin, Texas  78759

Opinion No.  JM-1063

Re:    Whether a state agency
may pay the temporary fees
assessed against accountants
and engineers in its employ
(RQ-1619)

Dear Ms. Ottmers:

You refer to Attorney General Letter Opinion 88-79, which concluded that a state agency is not prohibited by the Texas Constitution from paying the attorney tax imposed by Tax Code section 191.142 for any attorney in its employ on the date on which the tax becomes due.

You ask whether a state agency is likewise constitutionally permitted to pay the temporary increase in fees imposed on accountants by V.T.C.S. article 41a-1, section 31. You also ask that our response cover all professional employees affected by the temporary fee increases imposed by House Bill 61. H.B. 61, Acts 1987, 70th Leg., 2d C.S., ch. 5, at 9. Section 31 of article 41a-1, added by House Bill 61, provided for the temporary fee increases for accountants. That bill also imposed similar fee increases on physicians, dentists, optometrists, chiropractors, psychologists, architects, engineers, real estate brokers, securities dealers, and veterinarians, as well as the temporary tax on attorneys addressed in Attorney General Letter Opinion 88-79. We will address the constitutionality of a state agency paying such fee increases for any such professionals within its employ.[1]

---

1. Attorney General Letter Opinion 88-135 noted that the "fee" increases imposed by House Bill 61 on engineers had the legal character of occupation taxes, their purpose being, per the bill's caption, "raising revenue to support
(Footnote Continued)

Attorney General Opinion MW-251 (1980) concluded that the State Purchasing and General Services Commission might spend appropriated funds to pay the notary license fees of employees if the executive director determined that the agency needed such notarial services and would receive an adequate return for such expenditures. The opinion discussed the language of article III, section 51, of the Texas Constitution, providing that the "Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual," and concluded that it would not bar such expenditures so long as they were "directly and substantially related to the performance of the state's governmental function." Id., citing Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960); Brazoria County v. Perry, 537 S.W.2d 89 (Tex. Civ. App. - Houston [1st Dist.] 1976, no writ); see also Attorney General Opinions H-133 (1973); WW-638 (1959); WW-433 (1958).

Two briefs submitted in response to your request point to the distinction made in Attorney General Opinion JM-313 (1985) and Attorney General Letter Opinion 88-79 between "minimum qualifications for public employment" and "additional training and/or specialization for additional duties." Those opinions indicated that payments by the state for obtaining or maintaining such "minimum qualifications" of individual employees would be barred by article III, section 51, of the constitution.

The briefs distinguish payment of the tax on attorneys from payment of the other temporary professional fee increases imposed by House Bill 61, suggesting that if the latter fee is requisite to obtaining or maintaining the professional licenses in question, the state might be barred from paying it as payment for the obtaining or maintaining of "minimum qualifications."

---

(Footnote Continued)
state and local government." The other "fee" increases imposed by that bill on members of other professions would thus appear to be, in fact, occupation taxes as well, the proceeds from each of those fee increases being subject to identical provisions as to their apportionment between the foundation school fund and the general revenue fund. See Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers Bd., 519 S.W.2d 620 (Tex. 1975).

Attorney General Opinion JM-313 (1985) first made the distinction between "minimum qualifications" and "additional training and/or specialization" in considering whether the bar dues of a prosecutor's office personnel could be paid from the "hot check fund" established under article 53.08 of the Code of Criminal Procedure. That opinion concluded that the payment of bar dues was an "expense related to the individual's profession rather than an 'office expense'" within the meaning of the article 53.08(e) provision that the "hot check fund" could be used only for "defraying the salaries and expenses of the prosecutor's office." While we decline to review here the appropriateness of these distinctions in reaching the conclusion in Attorney General Opinion JM-313 that attorney bar dues were not authorized expenditures under article 53.08, we now disapprove any implication in that opinion that such distinctions are to be applied in determining the propriety of an expenditure for purposes of the constitutional restrictions set out in article III, section 51, of the state constitution. We think that the proper test under article III, section 51, absent more restrictive statutory provisions governing specific expenditures, is that set out in Attorney General Opinion MW-251, i.e., whether the expenditure is "directly and substantially related to the agency's governmental function," and whether the agency receives adequate return for its expenditures.

Likewise, to the extent that Attorney General Letter Opinion 88-79 relied on the fact that the payment of the Tax Code section 191.142 attorney tax was not an expenditure for obtaining or maintaining "minimum qualifications" of public employment (payment of the tax not being requisite to maintaining the license) in concluding that a state agency might constitutionally pay the tax for its attorney employees, we now disapprove that opinion's rationale, while adhering to its result. We think that payment of an employee's temporary attorney tax by a state agency is not prohibited by article III, section 51, of the Texas Constitution if the agency reasonably determines that such expenditure is directly and substantially related to the agency's governmental function. The agency's decision is subject to review for abuse of discretion. See, e.g., County School Trustees v. District Trustees, 192 S.W.2d 891, 898 (Tex. Civ. App. - Eastland 1946, writ ref'd n.r.e.).

Therefore, in answer to your question whether a state agency may constitutionally pay the temporary increase in fees imposed by House Bill 61 for accountants and other affected professionals in its employ, we conclude that if

the responsible agency authority determines that the agency will receive adequate return on such expenditures, that is, that such expenditures would be directly and substantially related to the agency's governmental function, the fees may be paid by the agency.

Since your question is whether such payments are con-stitutionally permissible, we do not address here any statutory restrictions which might apply to an agency's payment of such fees, such as the appropriation items from which such fees might be payable. We do caution that by concluding that any agency may constitutionally pay such fees, we do not mean that an agency is required to pay them, even if it determines that it would receive an adequate return on such expenditures. We would also note that while certain factors, such as whether the employee in question is employed full-time or part-time, whether he also uses his professional credentials in working outside the confines of state employment, or whether the professional credentials in question are required or merely useful in performing his duties, would certainly carry weight in determining whether the agency receives an adequate quid pro quo for paying the fees, none of these factors standing alone would be determinative of the constitutional propriety of paying the fees. So long as the agency reasonably determines that it will receive an adequate return for the payments under the test discussed above, the determination of whether to pay fees of particular classes of professional employees would be a policy decision rather than a constitutionally mandated one, subject of course to any statutory restrictions on such payments.

You also ask whether a state agency would be "constitu-tionally correct" when it pays the temporary attorney tax under Tax Code section 191.142 for attorney employees but refuses to pay the temporary fee increases for other professional employees upon whom House Bill 61 imposed fee increases. We think that, absent distinctions based on race, gender, or other classifications which would trigger heightened constitutional scrutiny of its actions, an agency may, consistent with state and federal equal protection principles, opt to pay the temporary fee or tax for some kinds of professionals in its employ and not for others, so long as there is a "rational basis" for its actions. See, e.g., Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307 (1976). Since your question goes to the practices of state agencies generally, we will not speculate as to which factors to be considered in a particular agency's operations might furnish such a "rational basis" for paying

the professional fees of some groups of professional employees but not others.

### S U M M A R Y

A state agency is not prohibited by article III, section 51, of the Texas Constitution from paying, for professionals in its employ, the temporary fee increases imposed on certain professionals if the agency determines that such expenditures would be directly and substantially related to its governmental function. An agency may pay the fees of some such classes of professionals in its employ, but not others, if there is a rational basis for its actions.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General